UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRT MANAGEMENT LLC, ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MALDEN STORAGE, LLC, ) <br> PLAIN AVENUE STORAGE, LLC, and ) <br> BANNER DRIVE STORAGE, LLC ) <br>       Defendants ) <br> And ) <br> ) <br> MALDEN STORAGE, LLC and ) <br> PLAIN AVENUE STORAGE, LLC, ) <br>       Plaintiffs-in-Counterclaim/ ) <br>       Third-Party Plaintiffs ) <br> ) <br> v. ) <br> ) <br> BRT MANAGEMENT, LLC, ) <br>       Defendant-in-Counterclaim ) <br> ) <br> And ) <br> ) <br> BRIAN WALLACE, ) <br>       Third-Party Defendant. ) | Case No.:1:17-cv-10005-FDS |

## FIRST AMENDED THIRD-PARTY COMPLAINT

Plaintiffs-in-Counterclaim/Third-Party Plaintiffs Plain Avenue Storage, LLC ("Plain Avenue Storage") and Malden Storage, LLC ("Malden Storage") assert the following claims against the Defendant-in-Counterclaim BRT Management LLC ("BRT") and Third-Party Defendant Brian Wallace ("Wallace"):

### A.      PARTIES

1.     Plaintiff-in-Counterclaim Plain Avenue Storage is a Delaware limited liability company, with a principal place of business in Northbrook, Illinois.  Plain Avenue Storage is registered to conduct business in the State of New York.

2.     Plaintiff-in-Counterclaim Malden Storage is a Delaware limited liability company, with a principal place of business in Northbrook, Illinois.  Malden Storage is registered to conduct business in the Commonwealth of Massachusetts.

3.     Defendant-in-Counterclaim BRT Management LLC ("BRT") is a Massachusetts limited liability company with a usual place of business in 22 Cottage Lane, Pembroke, Massachusetts.  BRT is not registered to conduct business in the State of New York.

4.     Upon information and belief, Third-Party Defendant Brian Wallace ("Wallace") is an individual residing at 22 Cottage Lane, Pembroke, Massachusetts.  At all relevant times, Wallace has been the sole manager and the principal of BRT.

### B.      JURISDICTION AND VENUE

5.     Plain Avenue Storage's and Malden Storage's counterclaims and third-party claims arise from the same set of material facts as BRT's Complaint; namely, the construction contracts between (1) Plain Avenue Storage and BRT, and (2) Malden Storage and BRT.

6.     Accordingly, Plain Avenue Storage's and Malden Storage's counterclaims are properly raised in this action as compulsory counterclaims.

7.     The Court has subject matter jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. §1332.

8.      Venue is proper in Massachusetts because BRT has its principal place of business and

Wallace resides in Massachusetts.  Additionally, a substantial portion of the events giving

rise to the counterclaims transpired in Massachusetts.

## C.      FACTUAL ALLEGATIONS

### i.   *PLAIN AVENUE STORAGE PROJECT*

9.      On or about January 8, 2016, Plain Avenue Storage and BRT executed a design build

contract, pursuant to which BRT agreed to build a storage facility at 22 Plain Avenue in

New Rochelle, New York for a guaranteed maximum price of $8,045,882 ("New

Rochelle Contract").

10.     The Parties amended the New Rochelle Contract in writing on April 19, 2016 ("First

Amendment").

11.     Wallace signed the New Rochelle Contract and the First Amendment on behalf of BRT,

as its Manager.

12.     The New Rochelle Contract required BRT to complete construction of the New Rochelle

Storage Facility within twelve (12) months.

13.     The New Rochelle Contract required BRT to invoice Plain Avenue Storage for its general

conditions based on the percentage of work completed.

14.     The New Rochelle Contract required BRT to submit monthly pay applications in

compliance with the Pay Application Policies and Procedures set forth in Exhibit D

thereto and the requirements of Plain Avenue Storage's lender ("the Lender").

15.     Pursuant to the New Rochelle Contract, the Parties agreed that BRT's subcontractors

would not be paid via third party escrow agent prior to the receipt and approval of proper

pay applications.

16.  Despite Plain Avenue Storage's efforts to assist BRT with the pay application process, BRT repeatedly failed to submit proper pay applications in accordance with the New Rochelle Contract, including the Lender's requirements.

17.  BRT breached the New Rochelle Contract by repeatedly and intentionally overbilling for its general conditions, materials, overhead, and profit.

18.  BRT breached the New Rochelle Contract by knowingly and intentionally billing Plain Avenue Storage for materials stored off-site without prior permission.

19.  Wallace directed BRT's actions, including the submission of pay applications he knew to be false.

20.  Wallace and BRT certified and submitted BRT's pay applications, knowingly and intentionally making false representations to Plain Avenue Storage.

21.  Wallace and BRT repeatedly failed to revise and re-submit pay applications, despite receiving specific instructions and good faith assistance from Plain Avenue Storage.

22.  Despite representations by Wallace and BRT, BRT failed to timely provide a Workers Compensation certificate to Plain Avenue Storage as required to commence construction.

23.  Despite representations by Wallace and BRT, BRT failed to timely complete and submit paperwork required by the New Rochelle Industrial Development Agency, which provided special tax financing for the Plain Avenue Storage Project.

24.  Despite representations by Wallace and BRT, BRT failed to timely enter into and provide copies of subcontracts for 60% of the project work, as required by the Lender to begin funding construction.

25.  Despite representations by Wallace and BRT, BRT failed to timely complete an application for the demolition permit with the City of New Rochelle.  Plain Avenue

Storage discovered this failure by visiting the City's Building Inspector's office to investigate the status of the permit.

26. As a result of BRT's breaches of the New Rochelle Contract, commencement of the project was delayed for approximately five (5) months, until May 2016.

27. As a result of BRT's delays and repeated failures to comply with the requirements of the New Rochelle Contract and the Lender, payments to BRT and its subcontractors were delayed.

28. Wallace and BRT repeatedly made knowing and intentional false representations to Plain Avenue Storage, stating that BRT was either in compliance with the New Rochelle Contract or would be in compliance with the New Rochelle Contract within days.

29. In reliance upon Wallace's and BRT's misrepresentations, Plain Avenue Storage in good faith submitted pay applications to the Lender without all required paperwork in an effort to assist in getting BRT paid as soon as possible.  In addition, Plain Avenue Storage continued to work with BRT and forbore terminating the New Rochelle Contract during the Spring and Summer of 2016.

30. Plain Avenue Storage's reliance upon Wallace's and BRT's false statements was reasonable in light of the circumstances.

31. In August 2016, the parties received a geotechnical report which reflected the same soil conditions as an earlier September 2015 report, which pre-dated the New Rochelle Contract.

32. The August 2016 report also showed that the underlying foundation walls were not as originally expected.

33. Based on the August 2016 Report, BRT claimed additional work would be necessary and requested the execution of change orders in the sum of $239,384.44.

34. The New Rochelle Contract required the removal of all foundations within the original scope of the work and BRT's Guaranteed Maximum Price budgeted adequate funds for such removal.

35. Accordingly, Plain Avenue Storage refused to execute the proposed change orders because the work required was within the scope of the New Rochelle Contract.

36. Plain Avenue Storage requested additional documents and information from BRT regarding the proposed change orders.  BRT never provided the requested information.

37. Upon information and belief, BRT wanted to get out of the New Rochelle Contract because it had underbid the Project and its Guaranteed Maximum Price was too low.

38. On September 1, 2016, Plain Avenue Storage sent BRT correspondence stating that, in the spirit of cooperation, it was willing to approve change order #3, despite the fact that the work sought in the change order was already within the scope of the New Rochelle Contract and budget, if BRT agreed to certain conditions and provided additional information.

39. BRT did not agree to Plain Avenue Storage's conditions or provide the requested information.

40. Despite repeated requests, BRT failed to provide an updated construction schedule.

41. In addition, BRT breached the New Rochelle Contract by failing to have a superintendent on site overseeing the project during five (5) visits by Plain Avenue Storage.

42. On September 13, 2016, Plain Avenue Storage informed BRT that it intended to terminate the New Rochelle Contract.

43.     On September 21, 2016, Plain Avenue Storage provided BRT with formal notice of termination for cause, effective September 29, 2016, because the project was only 17% complete and more than 80 days behind schedule.

44.     On September 29, 2016, BRT turned the site over to Plain Avenue Storage.

45.     Upon information and belief, Wallace and BRT asked the project architect and engineer not to cooperate with Plain Avenue Storage following the termination of the New Rochelle Contract.

46.     Knowing that their actions would substantially delay the Plain Avenue Storage Project, Wallace and BRT acted in retaliation for Plain Avenue Storage's decision to terminate the New Rochelle Contract for cause.

47.     As a result of Wallace's and BRT's actions, the project architect and engineer failed and refused to turn over their drawings and plans for the Plain Avenue Storage Project or to cooperate with Plain Avenue Storage regarding completion of the Project, resulting in substantial additional delays.

48.     The New Rochelle Contract required BRT to contractually obligate each of its design professionals, including the project architect and engineer,  to convey to Plain Avenue Storage the following:

> a non-exclusive license to use that design professional's Instruments of Service for the completion, use, and maintenance of the Project, conditioned upon the Owner's written notice to that Design Professional of the Owner's assumption of the Design-Builder's contractual duties and obligations  to that design professional and payment to that design professional of all amounts due to that design professional and its consultants.  The Design-Builder shall incorporate the requirements of this Section A.1.6.4 in all agreements with its design professional.

49.    Upon information and belief, BRT breached the New Rochelle Contract by failing to include this language in its contracts with the architect and engineer.

50.    On October 17, 2016, BRT submitted its final pay application to Plain Avenue seeking payment of $892,646.71.  This pay application, like all others, was certified by Wallace.

51.    On October 22, 2016, BRT filed a lien against the Plain Avenue Storage Project in the amount of $5,899,493.31.

52.    Wallace verified the amount sought in the lien, despite  filing an application for pay seeking less than $1 Million five (5) days earlier and knowing that the Project was no more than 17% complete.

53.    At termination, Plain Avenue Storage had already paid 25% of the New Rochelle Contract to BRT.

54.    In addition, Wallace and BRT knowingly and intentionally converted $185,000 from Plain Avenue Storage, claiming this sum had been paid to its subcontractor to lock in steel prices.  See Pay Applications attached hereto as Ex. A.

55.    Plain Avenue Storage later learned from the subcontractor that although BRT had invoiced and been paid $224,900 for the steel and represented that he paid that full amount to the subcontractor, BRT had only paid the subcontractor $39,900 and retained the balance ($185,000).

56.    Despite demand by Plain Avenue Storage, Wallace and BRT have not returned said funds.

57.    On December 14, 2016, the Parties attempted unsuccessfully to mediate their disputes as required by the New Rochelle Contract.

58. The Plain Avenue Storage Project is currently 251 days behind schedule and delays continue to accrue based on Wallace's and BRT's actions as described herein.

### ii. *MALDEN STORAGE PROJECT*

59. On or about February 2, 2016, Malden Storage and BRT executed a design build contract, pursuant to which BRT agreed to build a storage facility at 490 Eastern Avenue, Malden, Massachusetts for a guaranteed maximum price of $7,219,173. ("Malden Contract").

60. Wallace signed the Malden Contract on behalf of BRT, as its Manager.

61. The Malden Contract required BRT to complete construction of the Malden Storage Facility within three hundred thirty-five (335) days.

62. The Malden Contract required BRT to invoice Malden Storage for its general conditions based on the percentage of work completed.

63. The Malden Contract required BRT to submit monthly pay applications in compliance with the Pay Application Policies and Procedures set forth in Exhibit D thereto and the requirements of Malden Storage's lender ("the Lender").

64. Pursuant to the Malden Contract, the Parties agreed that BRT's subcontractors would not be paid via third party escrow agent prior to receipt and approval of proper pay applications.

65. Despite Malden Storage's efforts to assist BRT with the pay application process, BRT repeatedly failed to submit proper pay applications in accordance with the Malden Contract, including the Lender's requirements.

66. Upon information and belief, BRT breached the Malden Contract by repeatedly and intentionally overbilling for its general conditions, materials, overhead, and profit.

67.    BRT breached the Malden Contract by knowingly and intentionally billing Malden
       Storage for materials stored off-site without prior permission.

68.    Wallace directed BRT's actions, including the submission of pay applications Wallace
       and BRT knew to be false.

69.    Wallace and BRT certified and submitted BRT's pay applications, knowingly and
       intentionally making false representations to Malden Storage.

70.    Wallace and BRT repeatedly failed to revise and re-submit pay applications, despite
       receiving specific instructions and good faith assistance from Malden Storage.

71.    On June 23, 2016, Wallace and BRT informed Malden Storage, for the first time, of the
       need to obtain a variance from the City of Malden to crush and recycle masonry on site.

72.     As a result of Wallace's and BRT's delays in obtaining the variance, the building permit
       for the Malden Storage Project was not issued until August 11, 2016 – six months after
       the Malden Contract was executed – in breach of the Malden Contract.

73.    Wallace and BRT failed to obtain the building permit and other required permits in a
       timely manner.

74.    Upon information and belief, Wallace and BRT delayed the permits in order to obtain
       additional time to complete the Malden Storage Project pursuant to the Malden Contract.

75.    Upon information and belief, BRT wanted to get out of the Malden Contract because it
       had underbid the Project and its Guaranteed Maximum Price was too low.

76.    On June 28, 2016, BRT submitted revised pay application #1 and pay application #2,
       totaling $831,382.91.

77.    Three days later, on July 1, 2016, BRT filed a lien against the Malden Storage Project,
       certified by Wallace, in the amount of $6,902,232.

78.  The Lender refused to fund the pay applications until the lien was released.  BRT released the lien on July 19, 2016.

79.  As a result of BRT's delays and repeated failures to comply with the requirements of the Malden Contract and the Lender, payments to BRT and its subcontractors were delayed.

80.  Wallace made repeated knowing and intentional false representations to Malden Storage, stating that BRT was either in compliance or would be in compliance with the Malden Contract within days.

81.  In reliance upon Wallace's misrepresentations, Malden Storage submitted pay applications to its lender to ensure BRT was paid as soon as possible.  In addition, Malden Storage continued to work with BRT and forbore terminating the Malden Contract prior to January, 2017.

82.  Malden Storage's reliance upon Wallace's false statements was reasonable in light of the circumstances.

83.  On October 7, 2016, BRT submitted change order #2, claiming additional work was necessary.

84.  Malden Storage and its Lender requested changes to change order #2, as well as additional information and documents from BRT.

85.  BRT delayed and/or failed to provide the requested information or to make the requested changes to change order #2.

86.  BRT has refused Malden Storage's request for the CAD drawings for the Malden Project, which BRT is required to deliver under the Malden Contract.

87.  Despite repeated requests, BRT failed to provide an updated construction schedule.

88. On December 27, 2016, BRT filed a lien against the Malden Storage Project for $917,549.65, for which Malden Storage obtained a target lien bond.

89. On January 3, 2017, BRT threatened to stop work on the project if not paid in full by January 10, 2017.

90. At the time, Wallace and BRT were fully aware that BRT was not entitled to payment because it had failed to comply with Malden Storage's and its Lender's requests for revisions to its pay applications and for additional information, including an updated construction schedule.

91. On January 3, 2017, BRT filed suit against Malden Storage and Plain Avenue Storage.

92. BRT breached the Malden Contract by not mediating its disputes with Malden Storage prior to filing suit.

93. On January 10, 2017, BRT shut down work on the Malden Project with less than 40% of construction completed.

94. On January 12, 2017, Malden Storage's representative visited the site and was denied access by BRT's superintendent.

95. On January 13, 2017, BRT let its insurance coverage for the Malden Project lapse in breach of the Malden Contract.  The coverage lapse lasted for six (6) days, until BRT provided a new certificate of insurance effective January 19, 2017.

96. On January 23, 2017, Malden Storage terminated the Malden Contract for cause.

97. On January 27, 2017, Malden Storage provided BRT with a transition letter, instructing BRT to turn over the site no later than January 31, 2017 and to submit its final pay application by February 7, 2017

98.  At BRT's request, the deadline for turning over the site was extended to February 7, 2017.

99.  BRT represented that it would provide a final pay application no later than February 7, 2017.

100.  As of March 7, 2017, BRT's final pay application has not been received.

101.  Based on BRT's failure to pay its subcontractors and/or to submit a final pay application allowing Malden Storage to pay them, multiple liens have been filed against the Project and bonded by Malden Storage.

102.  Upon information and belief, Wallace and BRT asked the project architect and engineer not to cooperate with Malden Storage following the termination of the Malden Contract.

103.  Knowing that their actions would substantially delay the project and cost extra money, Wallace and BRT acted in retaliation for Malden Storage's decision to terminate the Malden Contract for cause.

104.  As a result of Wallace's and BRT's actions, the project architect and engineer failed and refused to turn over their drawings and plans for the Malden Storage Project or to cooperate regarding completion of the Project, resulting in substantial additional delays.

105.  The Malden Contract required BRT to contractually obligate each of its design professionals, including the project architect and engineer, to convey to Malden Storage the following:

> a non-exclusive license to use that design professional's Instruments of Service for the completion, use, and maintenance of the Project, conditioned upon the Owner's written notice to that Design Professional of the Owner's assumption of the Design-Builder's contractual duties and obligations to that design professional and payment to that design professional of all amounts due to that design professional and its consultants. The

> Design-Builder shall incorporate the requirements of this Section
> A.1.6.4 in all agreements with its design professional.

106. Upon information and belief, BRT breached the Malden Contract by failing to include this language in its contracts with the architect and engineer.

107. Wallace and BRT have repeatedly contacted the Building Inspector for the City of Malden demanding that he revoke the permits for the Project and not allow Malden Storage to proceed based on the existing plans and drawings with a new architect and engineer.

108. In addition, Wallace and BRT knowingly and intentionally converted $142,282 from Malden Storage.

109. As for the Plain Avenue Storage Project, Wallace and BRT invoiced and were paid these funds for the purpose of paying BRT's steel subcontractor, but instead retained the money.  See Pay Applications, attached hereto as Ex. B.

110. Despite demand by Malden Storage for evidence of the proper application of these funds, Wallace and BRT have failed to produce any documentation or to return said funds.

111. The Malden Storage Project is currently 147 days behind schedule and delays continue to accrue based on Wallace's and BRT's actions as described herein.

### Count I – Breach of New Rochelle Contract
### (Plain Avenue Storage v. BRT)

112. The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-111 as if fully set forth herein.

113. Plain Avenue Storage and BRT entered into the New Rochelle Contract.

114. BRT materially breached the New Rochelle Contract as set forth herein.

115.   As a result of BRT's material breaches of the New Rochelle Contract, Plain Avenue

      Storage has been damaged in an amount to be proven at trial

### Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Plain Avenue Storage v. BRT)

116.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-115 as if fully set forth

      herein.

117.   The New Rochelle Contract carries with it an implied covenant of good faith and fair

      dealing.

118.   By the conduct described herein, and acting with improper motives, BRT breached the

      implied covenant of good faith and fair dealing.

119.   As a direct and proximate result of BRT's breach of this covenant, Plain Avenue Storage

      has been damaged in an amount to be proven at trial

### Count III – Conversion
### (Plain Avenue Storage v. Wallace and BRT)

120.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-119 as if fully set forth

      herein.

121.   Wallace and BRT knowingly and intentionally exercised unauthorized and improper

      dominion and/or control over $185,000 belonging to Plain Avenue Storage.

122.   Neither Wallace nor BRT had any right to said funds pursuant to the New Rochelle

      Contract or applicable law.

123.   Plain Avenue Storage has demanded the return of said funds, which Wallace and BRT

      have refused.

124.   As a result of Wallace's and BRT's actions, Plain Avenue Storage has been damaged in

      an amount to be proven at trial.

### IV – Tortious Interference with Advantageous Relations
### (Plain Avenue Storage v. Wallace and BRT)

125.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-124 as if fully set forth herein.

126.   Plain Avenue Storage had advantageous relationships with the architect and engineer for the Plain Avenue Storage Project, as set forth herein.

127.   Wallace and BRT knew of these  relationships.

128.   With improper purpose and means, Wallace and BRT knowingly and intentionally interfered with Plain Avenue Storage's relationships as described herein.

129.   Wallace's and BRT's knowing and intentional interference caused Plain Avenue Storage to lose the benefits of its relationships with the project architect and project engineer.

130.   Plain Avenue Storage has been damaged by Wallace's and BRT's intentional interference in an amount to be proven at trial.

### Count V-  Fraud
### (Plain Avenue Storage v. Wallace and BRT)

131.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-130 as if fully set forth herein.

132.   On many occasions, Wallace and BRT knowingly and intentionally made false representations to Plain Avenue Storage that BRT was in compliance with the New Rochelle Contract and the requirements of its Lender.

133.   On many occasions, Wallace and BRT knowingly and intentionally made false representations to Plain Avenue Storage that all information and documents requested by Plain Avenue Storage and its Lender would be provided within days.

134.   Wallace and BRT repeatedly certified and submitted false pay applications to Plain
       Avenue Storage and its Lender, including but not limited to pay applications claiming
       that Wallace and BRT had paid $185,000 received from Plain Avenue Storage to its steel
       contractor when, in fact, Wallace and BRT converted said funds.

135.   Plain Avenue Storage reasonably relied upon Wallace's and BRT's false statements, as
       described herein.

136.   As a result, in good faith, Plain Avenue Storage submitted BRT's pay applications to its
       lender for which BRT was not entitled to payment.

137.   In addition, based upon Wallace's and BRT's false statements, Plain Avenue Storage
       forbore terminating the New Rochelle Contract until September, 2016.

138.   Plain Avenue Storage has been damaged by Wallace's and BRT's fraud in an amount to
       be proven at trial.

## Count VI – New York General Business Law Section §349
### (Plain Avenue Storage v. BRT)

139.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-138 as if fully set forth
       herein.

140.   Plain Avenue Storage and BRT were engaged in trade or commerce in the State of New
       York.

141.   BRT provided services to Plain Avenue Storage, its consumer, pursuant to the New
       Rochelle Contract.

142.   BRT's actions were materially deceptive including (1) making fraudulent statements to
       Plain Avenue Storage; (2) knowingly and intentionally submitting improper pay
       applications to Plain Avenue Storage; and (3) maliciously interfering with Plain Avenue
       Storage's business relationships with the project architect and project engineer.

143.   As a result of BRT's deceptive acts and practices, as described herein, Plain Avenue

Storage has been damages in an amount to be proven at trial, including multiple damages

and attorneys' fees.

### Count VII – Breach of Malden Contract
### (Malden Storage v. BRT)

144.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-143 as if fully set forth

herein.

145.   Malden Storage and BRT entered into the Malden Contract.

146.   BRT materially breached the Malden Contract as set forth herein.

147.   As a result of BRT's material breaches of the Malden Contract, Malden Storage has been

damaged in an amount to be proven at trial

### Count VIII – Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Malden Storage v. BRT)

148.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-147 as if fully set forth

herein.

149.   The Malden Contract carries with it an implied covenant of good faith and fair dealing.

150.   By the conduct described herein, and acting with improper motives, BRT breached the

implied covenant of good faith and fair dealing with respect to the Malden Contract.

151.   As a direct and proximate result of BRT's breach of this covenant, Malden Storage has

been damaged in an amount to be proven at trial

### Count IX – Conversion
### (Malden Storage v. Wallace and BRT)

152.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-151 as if fully set forth

herein.

153.   Wallace and BRT intentionally exercised unauthorized and improper dominion and/or control over $142,282 belonging to Malden Storage.

154.   Neither Wallace nor BRT had any right to said funds pursuant to the Malden Contract or applicable law.

155.   Despite demand by Malden Storage for evidence of the proper application of these funds, Wallace and BRT have failed to produce any documentation or to return said funds.

156.   As a result of Wallace's and BRT's actions, Malden Storage has been damaged in an amount to be proven at trial.

<u>**X – Tortious Interference with Advantageous Relations**</u>
<u>**(Malden Storage v. Wallace and BRT)**</u>

157.   The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-156 as if fully set forth herein.

158.   Malden Storage had advantageous relationships with the architect and engineer for the Malden Project and the building inspector for the City of Malden, as set forth herein.

159.   Wallace and BRT knew of these relationships.

160.   With improper purpose and means, Wallace and BRT knowingly and intentionally interfered with Malden Storage's relationships as described herein.

161.   Wallace's and BRT's knowing and international interference caused Malden Storage to lose the benefits of its relationships with the project architect and project engineer and the building inspector for the City of Malden.

162.   Malden Storage has been damaged by this interference in an amount to be proven at trial.

## Count XI-  Fraud
## (Malden v. Wallace and BRT)

163.　The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-162 as if fully set forth herein.

164.　On many occasions, Wallace and BRT made knowing and intentionally false representations that BRT was in compliance with the Malden Contract and the requirements of the Lender.

165.　On many occasions, Wallace and BRT knowingly and intentionally made false representations to Malden Storage that all information and documents requested by Malden Storage and its Lender would be provided within days.

166.　Wallace and BRT repeatedly certified and submitted false pay applications to Malden Storage and its Lender, including but not limited to pay applications claiming that Wallace and BRT had paid $142, 282 received from Malden Storage to its steel contractor when, in fact, Wallace and BRT converted said funds.

167.　Malden Storage reasonably relied upon Wallace's and BRT's false statements, as described herein.

168.　As a result, in good faith, Malden Storage submitted BRT's pay applications to its lender for which BRT was not entitled to payment.

169.　In addition, based upon Wallace's and BRT's false statements, Malden Storage forbore terminating the Malden Contract until January 2017.

170.　Malden Storage has been damaged by Wallace's and BRT's fraud in an amount to be proven at trial.

**Count XII- Violation of M.G.L. c.93A, §11**
**(Malden Storage v. BRT)**

171.    The Plaintiffs-in-Counterclaim repeat and reallege paragraphs 1-170 as if fully set forth herein.

172.    Malden Storage and BRT were engaged in trade and commerce in the Commonwealth of Massachusetts.

173.    BRT's conduct as set forth above was unfair and deceptive in violation of Massachusetts General Laws Chapter 93A, Section 11.

174.    BRT's unfair and deceptive actions were knowing and willful, including (1) making fraudulent statements to Malden Storage; (2) submitting improper pay applications; and (3) maliciously interfering with Malden Storage's advantageous relationships with the project architect and project engineer and the building inspector for the City of Malden.

175.    As a result of BRT's knowing and willful violations of M.G.L. c. 93A, §11, Malden Storage has suffered damages in an amount to be proven at trial, including multiple damages and attorneys' fees.

**PRAYERS FOR RELIEF**

WHEREFORE, Plain Avenue Storage, LLC and Malden Storage, LLC respectfully request that this Court:

A.    For Counts I through V and VII through XI, award damages, as appropriate, including pre- and post-judgment interest and costs;

B.    For Counts VI and XII, award double or treble damages, plus attorneys' fees and costs; and

C.    Such other and further relief as the Court deems just.

PLAIN AVENUE STORAGE, LLC and
MALDEN STORAGE, LLC
By their attorneys,


/s/ John H. Brazilian
John H. Brazilian, Esq.
B.B.O #054980
Megan E. Perrotta, Esq.
B.B.O. #648225
BUTTERS BRAZILIAN LLP
One Exeter Plaza
Boston, Massachusetts 02116
Dated: March 24, 2017    (617) 367-2600
(617)367-1363 *f*
brazilian@buttersbrazilian.com
perrotta@buttersbrazilian.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non-registered participants
on this date.


/s/ John H. Brazilian
John H. Brazilian