UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRT MANAGEMENT, LLC, | ) | |
| | ) | |
|     Plaintiff/ | ) | |
|     Counterclaim Defendant, | ) | |
| | ) | Civil Action No. |
|     v. | ) | 17-10005-FDS |
| | ) | |
| MALDEN STORAGE, LLC and PLAIN AVENUE STORAGE, LLC, | ) | |
| | ) | |
|     Defendants/ | ) | |
|     Counterclaim Plaintiffs/ | ) | |
|     Third-Party Plaintiffs, | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| BRIAN WALLACE, | ) | |
| | ) | |
|     Third-Party Defendant. | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS FOR PREJUDGMENT RELIEF AGAINST BRIAN WALLACE AND BRT MANAGEMENT, LLC

**SAYLOR, C.J.**

This is a dispute between an owner and a contractor over the construction of two self-storage facilities, one in New Rochelle, New York, and one in Malden, Massachusetts. Plaintiff and counterclaim defendant BRT Management, LLC is the contractor, and third-party defendant Brian Wallace is the principal of BRT. Defendants, counterclaim plaintiffs, and third-party plaintiffs Plain Avenue Storage, LLC and Malden Storage, LLC are entities created by the effective owner, a company doing business as Banner Real Estate Group.

This matter was tried to the Court without a jury. On September 10, 2021, the Court found in favor of Plain Avenue Storage and Malden Storage on all of BRT's claims and several

of their counterclaims and third-party claims. Plain Avenue Storage and Malden Storage have moved for various forms of security for their recovery, including a Motion for Injunctive Relief [Docket No. 208]; Motion for Real Estate Attachment and Seizure of Vehicles [Docket No. 210]; and Motion to Reach and Apply Interests in LLCs [Docket No. 217].

For the following reasons, the Motion for Injunctive Relief and Motion for Real Estate Attachment and Seizure of Vehicles will be granted in part. The motions will otherwise be denied without prejudice.

## I. Background

On January 3, 2017, BRT filed this action against Malden Storage, Plain Avenue Storage, and Banner Drive Storage.[1] The complaint asserted eight claims. Counts 1 through 6 alleged parallel common-law claims for breach of contract, quantum meruit and unjust enrichment, and breach of the implied covenant of good faith and fair dealing, respectively, against Plain Avenue Storage (Counts 1, 2, and 3) and Malden Storage (Counts 4, 5, and 6). Counts 7 and 8 were claims against Malden Storage for violations of Mass. Gen. Laws ch. 149, § 29E, concerning construction contracts (Count 7), and for unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A, § 11 (Count 8).

Plain Avenue Storage and Malden Storage later counterclaimed against BRT and filed a third-party complaint against Wallace. The amended counterclaim asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, tortious interference with advantageous relations, and fraud by Plain Avenue Storage (Counts 1 through 5) and by Malden Storage (Counts 7 through 11). The amended counterclaim also asserted state-

---

[1] On August 7, 2017, the Court granted an assented-to motion to dismiss Banner Drive Storage from the litigation.

law statutory claims against BRT for deceptive business acts and practices under N.Y. Gen. Bus. Law § 349 (Count 6), and for unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A, § 11 (Count 12).

The amended third-party complaint alleged claims against Wallace for conversion, tortious interference with advantageous relations, and fraud, respectively, by Plain Avenue Storage (Counts 3, 4, and 5) and by Malden Storage (Counts 9, 10, and 11).

The matter was tried to the Court without a jury between April 26 and May 6, 2021. On September 10, 2021, the Court issued its Findings of Fact and Conclusions of Law. The Court found in favor of Malden Storage and Plain Avenue Storage on all of BRT's claims and several of their counterclaims and third-party claims. (Findings of Fact & Conclusions of Law ¶¶ 313-21). BRT and Wallace were found liable for damages in excess of $7 million and $378,000, respectively.[2] A final judgment has not yet been entered. Malden Storage and Plain Avenue Storage have moved for prejudgment relief, seeking to enjoin BRT and Wallace from diminishing the value of their assets; to attach real estate and seize vehicles owned by Wallace; and to reach and apply Wallace's interests in certain LLCs.[3] The Court held a hearing on the motions on January 6, 2022.

## II.     Analysis

### A.     Motion for Injunctive Relief

Defendants have moved for injunctions against Wallace and BRT, restraining and enjoining them from conveying, transferring, encumbering, or otherwise diminishing the value of

---

[2] The Court made a finding of joint and several liability against BRT and Wallace for conversion, fraud, and tortious interference with advantageous relations.

[3] Defendants also filed a motion to appoint a receiver [Docket No. 214]. During oral argument, counsel for defendants requested that the Court defer action on this motion pending further developments.

their assets.  They assert that based on BRT and Wallace's prior improper conduct, as substantiated by the Court's findings of liability for conversion, fraud, and tortious interference, they are entitled to injunctions in order to ensure that BRT and Wallace's assets are available to satisfy a final judgment likely to be entered in their favor.

Fed. R. Civ. P. 64 provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Although a district court does not have authority under its equitable powers to issue a preliminary injunction preventing the transfer of assets pending the adjudication of a claim for money damages, *see Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999), that "does not constrain the district court's authority to grant analogous relief under Rule 64 when authorized by the law of the forum state."  *Pineda v. Skinner Services, Inc.*, 2021 WL 6143689, at *1 (1st Cir. Dec. 30, 2021).  The First Circuit recently affirmed a preliminary injunction restraining the transfer or sale of business assets pursuant to Rule 64, noting that Massachusetts law would permit a preliminary injunction under similar circumstances.  *Id.* at *4-5; *see also R.G. v. Hall*, 37 Mass. App. Ct. 410 (Mass. App. Ct. 1994) (noting court's authority to sequester assets up to amount of damages plaintiffs may reasonably recover).

To obtain a preliminary injunction under Massachusetts law, the moving party must generally establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, and (3) that the risk of irreparable harm outweighs harm to the nonmoving party if the injunction is granted.  *Mass. Port Auth. v. Turo Inc.*, 487 Mass. 235, 239 (2021).

The first factor, the likelihood of success on the merits, unquestionably weighs heavily in

defendants' favor.  This Court has determined the liability of BRT and Wallace on defendants' claims after a bench trial.  It awarded Plain Avenue Storage damages from BRT in the amount of $3,966,715.14 for breach of contract and $185,000 for conversion and fraud (jointly and severally with Wallace).  It also awarded Malden Storage damages from BRT in the amount of $2,913,525.63 for breach of contract; $142,282 for conversion and fraud (jointly and severally with Wallace); and $51,546.25 for tortious interference with advantageous relations (jointly and severally with Wallace and overlapping with breach-of-contract award).

The second factor requires a showing of irreparable injury.  "The possibility that a [party] may not have assets on the day of judgment may not automatically make out a showing of irreparable injury, . . . but the story is quite different where there is a strong indication that the [party] may dissipate or conceal assets."  *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005) (internal citations omitted).  Thus, irreparable harm can exist given a "[party's] probable fraud" and "his prevarications about repayment."  *Id.*

Here, the Court has determined that BRT and Wallace are liable for conversion.  Specifically, it found that BRT exercised unauthorized possession of funds when it received money from Plain Avenue Storage and Malden Storage intended for payment to a sub-contractor and did not make those payments.  (Findings of Fact & Conclusions of Law ¶¶ 206; 215).  Wallace personally participated in the conversion.  (*Id.* ¶¶ 213; 222).

The Court also found that BRT and Wallace were liable for fraud.  Specifically, it determined that Wallace, on behalf of BRT, knowingly submitted sworn statements, pay applications, and invoices that were false at the time they were made, and were made for the purpose of inducing Plain Avenue Storage and Malden Storage to pay money to BRT.  (*Id.* ¶¶ 227; 231).  Again, Wallace personally participated in the fraudulent conduct.  (*Id.* ¶¶ 229;

233).

The Court's finding that BRT and Wallace have committed acts of conversion and fraud puts this case in a different posture from a typical case, where it may be difficult to show irreparable harm where the remedy sought is money damages. Defendants have shown that BRT and Wallace have committed intentional acts of misconduct, including fraud, and are therefore likely to dissipate or conceal their assets in order to avoid judgment. *See Micro Signal*, 417 F.3d at 31; *B2 Opportunity Fund, LLC v. Trabelsi,* 2017 WL 1196645, at *2 (D. Mass. Mar. 30, 2017) (granting preliminary injunction where irreparable harm was demonstrated by evidence of fraud). And defendants have likewise shown that the balance of equities tips in their favor. Any effect on the public interest, if relevant, is not present here.

Defendants' motion for injunctive relief will therefore be granted in part. The Court will preliminarily enjoin BRT from any sale, transfer, conveyance, or encumbrance of its property or other assets, other than in the ordinary course of business, such as payments to sub-contractors, government entities, lenders, employees, and vendors. BRT will not be permitted to make any payments or transfers to Wallace, or any other members of BRT, any of Wallace's family members, or any persons or entities controlled by or affiliated with them. Such actions will, however, be permitted if BRT's unencumbered net assets, after the sale, transfer, conveyance, or encumbrance, not including good will, would total not less than $8,000,000 (representing the sum of $7,207,522.77 and an allowance for reasonable attorneys' fees). The Court will also enjoin Wallace from any sale, transfer, conveyance, or encumbrance of his property or other assets that would have the effect of reducing the value of his unencumbered net assets below

$378,828.25.[4]

## B. Motion for Real Estate Attachment and Seizure of Vehicles

In addition to a preliminary injunction, defendants have sought prejudgment attachment of Wallace's real and personal property located within the Commonwealth of Massachusetts and for the seizure of certain vehicles that he owns.

As noted, Fed. R. Civ. P. 64 authorizes the court to grant certain prejudgment remedies that are available under Massachusetts law. One such remedy is prejudgment attachment, which is "a process issued by the court before judgment has been rendered, authorizing the seizure of the real and personal property of the defendant to be held as security for any judgment the plaintiff may recover in the action. Such attachments are governed by Mass. Gen. Laws ch. 223, §§ 42-59 and Mass. R. Civ. P. 4.1." *Mullane v. Chambers*, 333 F.3d 322, 329 (1st Cir. 2003). To obtain an order of prejudgment attachment under Massachusetts law, the moving party must demonstrate (1) a reasonable likelihood of success on the merits, and (2) a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant to be available to satisfy judgment. Mass. R. Civ. P., Rule 4.1(c). Ordinarily, a motion to attach must also be supported by an affidavit or set of affidavits that set forth "specific facts sufficient to warrant the required findings." *Id.*, Rule 4.1(h).

Here, defendants have not filed an affidavit, as required by Rule 4.1(h), and have therefore not entirely complied with the procedural requirements for attachment under Massachusetts law. However, the purpose of the affidavit requirement is to ensure a certain level

---

[4] This amount represents the sum of Wallace's liability for fraud, conversion, and tortious interference with advantageous relations in the amount of $378,828.25. It does not include an allowance for reasonable attorneys' fees, for reasons explained below, nor any prejudgment interest.

of evidentiary proof, so that assets are not seized on the basis of unsworn claims.  Here, the motion to attach is supported by something substantially more persuasive than an affidavit—the Court has conducted a trial and issued findings of fact and conclusions of law that found Wallace liable as to defendants' claims.  Under the circumstances, the Court is persuaded that defendants have demonstrated that attachment is appropriate.  *Cf. Tunnicliff v. Motel 6, OLP*, 178 F.R.D. 8, 10 (D. Mass. 1998) (stating that "[b]ecause Tunnicliff has failed to submit supporting affidavits and *has not otherwise alleged specific facts* showing a reasonable likelihood of recovery in any amount, his motion for attachment of real property will be denied") (emphasis added).  There is also no evidence that Wallace possesses liability insurance to offset the final judgment.  *See* Mass. R. Civ. P., Rule 4.1(c).

       The only remaining questions are what assets to attach and in what amount.  Defendants request attachment of Wallace's real and personal property located within the Commonwealth of Massachusetts as well as seizure of certain of his motor vehicles.  Specifically, they seek attachment of real property located at 22 Cottage Lane, Plymouth, Massachusetts, and certain vehicles, including a Lamborghini Urus, a Bentley Continental, a BMW Z4, three Range Rover Sports, and a Volkswagen Touareg.

       Although neither party raised the issue, attachment is subject to certain homestead and vehicle exemptions.  *See* Mass. Gen. Laws ch. 223, § 42 ("[a]ll real and personal property liable to be taken on execution, except such personal property as, from its nature or situation, *has been considered as exempt* according to the principles of the common law as adopted and practiced in the commonwealth, *or which is specifically exempt from execution* . . . may be attached upon a writ of attachment in any action in which the debt or damages are recoverable, and may be held as security to satisfy such judgment as the plaintiff may recover . . .") (emphasis added).  Thus,

Wallace's real property may be attached only as to any amount over the homestead exemption limit set forth in Mass. Gen. Laws. ch. 188, §§ 3-5.  Wallace, however, has made no showing that the property in question is his homestead.  He is also entitled to a vehicle exemption pursuant to Mass. Gen. Laws. ch. 235, § 34.  Although he again has not made such an argument, he likely requires a vehicle for everyday use and employment, and therefore the Volkswagen Touareg will not be attached.

Finally, the Court must determine the amount of attachment.  Defendants seek attachment in the amount of $2,430,000, which represents not only Wallace's liability for fraud, conversion, and tortious interference, but also the $2,000,000 claimed in attorneys' fees and costs.  The Court has not yet ruled on defendants' petition for attorneys' fees and costs [Docket No. 207].  In any event, defendants cannot show a reasonable likelihood of success in recovering attorneys' fees and costs from Wallace.  Wallace was found liable for fraud, conversion, and tortious interference with advantageous relations.  The award of attorneys' fees to Malden Storage and Plain Avenue Storage flows from the contracts governing the New Rochelle and Malden projects, which provide for an award of all "reasonable costs and expenses incurred in connection with [this] litigation, . . . including reasonable attorneys' fees, filing fees, expert witness fees, discovery expenses, and any other reasonable costs incurred in prosecuting or defending" the present action.  (Findings of Fact & Conclusions of Law ¶ 295).  Defendants' breach of contract claims were brought against BRT, not Wallace.  Wallace was not a party to those contracts.  Accordingly, defendants can only show a reasonable likelihood of success in collecting $378,828.25 from Wallace.[5]

---

[5] This amount represents Wallace's liability to Plain Avenue Storage and Malden Storage for conversion and fraud in the amounts of $185,000 and $142,282, respectively, as well as liability to Malden Storage for tortious

For the foregoing reasons, defendants' motion for real estate attachment and seizure of vehicles will be granted in part. A writ of attachment shall issue as to real property and vehicles of Brian Wallace in Massachusetts, with the exception of his Volkswagen Touareg, in the amount of $378,828.25, in order to satisfy the likely final judgment in this case.

### C. Motion to Reach and Apply Interests in LLCs

Finally, defendants have moved for an order to reach and apply the equitable interest of Wallace in certain LLCs and enjoin Wallace and the LLCs from diminishing the value of his interest.

As noted, Fed. R. Civ. P. 64 permits the Court to grant prejudgment remedies that are available under Massachusetts law. "Reach and apply is a prejudgment security device which is equitable in nature; it seeks . . . to restrain the defendant's disposition of his own intangible property, and then to reach and apply such property to satisfy the plaintiff's claim." *In re Osgood*, 203 B.R. 865, 869-70 (Bankr. D. Mass. 1997) (quoting Michael C. Gilleran, *Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply*, 69 MASS. L. REV. 156, 169-70 (1984)). Mass. Gen. Laws ch. 214, §§ 3(6) and 3(7) are the relevant reach-and-apply statutes.[6] However, the statutes and case law set forth certain

---

interference in the amount of $51,546.25. It does not include any amounts for prejudgment interest, as defendants did not request an allowance for prejudgment interest in the present motion.

[6] Mass. Gen. Laws, ch. 214, §§ 3(6) and (7) provide that the Supreme Judicial Court and superior courts shall have original and concurrent jurisdiction over the following cases:

> (6) Actions by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor independently of any other person or cannot be reached and applied until a future time or is of uncertain value . . .

> (7) Actions to reach and apply shares or interests in corporations organized under the laws of the commonwealth or of the United States, and located or having a general office in the commonwealth, whether the plaintiff is a creditor or not, and whether the action is founded upon a debt or not.

procedural requirements that have not been met here.

According to the Supreme Judicial Court, an action to reach and apply pursuant to section 3(6) requires the following:

> [A] two-step proceeding wherein the plaintiff, in the first step, must show the existence of a debt owed the company by . . . the principal defendant. *See Stockbridge v. Mixer*, 215 Mass. 415, 418, 102 N.E. 646 (1913). The second step involves the process of satisfying the debt out of property held by one who owes a debt to the principal defendant. The plaintiff must show that this property, by its nature, is incapable of attachment or of taking on execution in a legal action. *Id.* Furthermore, the holder of this property must be joined as a party defendant in an action to reach and apply, given his interest in the issue of his indebtedness to the principal defendant and in the disposition of the property in his possession. *See William J. McCarthy Co. v. Rendle*, 222 Mass. 405, 406, 111 N.E. 39 (1916).

*Massachusetts Elec. Co. v. Athol One, Inc.*, 391 Mass. 685, 687-88 (1984). "Additionally, the plaintiff must seek an injunction restraining the debtor or a third party from disposing of property which the plaintiff intends to reach and apply in satisfaction of its claim." *In re Osgood*, 203 B.R. at 869 (citing *Massachusetts Elec. Co*, 391 Mass. at 687-88; *Stockbridge,* 215 Mass. at 418).

Section 3(7), in turn, requires that the shares or interests sought are from corporations organized under the laws of Massachusetts or the United States and located or having a general office in Massachusetts. Mass. Gen. Laws, ch. 214, § 3(7).

Defendants have not satisfied the requirements of either prong of the statute. They have not named any of the LLCs as reach-and-apply defendants. They arguably have not established an existing debt as required by section 3(6).[7] They also have not pointed to any case that applies section 3(7) to interests in LLCs. Their citations to *Snyder v. Smith*; *Hasbro, Inc. v. Serafino*;

---

[7] The First Circuit interpreted the term "debt" in section 3(6) to require a judgment, reasoning that "[s]ince the instant action contains contract, tort and statutory claims not reduced to judgment, the remedy of a statutory bill to reach and apply is not available at this stage of the proceedings under Massachusetts law." *In re Rare Coin Galleries of Am., Inc*., 862 F.2d 896, 904 (1st Cir. 1998).

and *Anderson Foreign Motors v. New England Toyota Distributors, Inc.* do not require a different conclusion.  In *Snyder,* the plaintiff filed an action to reach and apply certain equitable assets of the defendant in the possession of two trustees, who were also named as defendants. 185 Mass. 58, 60-62 (1904).  Defendants apparently cite to *Hasbro* and *Anderson Foreign Motors* for the proposition that the court should apply the standard for prejudgment attachment, not a traditional preliminary injunction.  *Hasbro, Inc. v. Serafino*, 958 F. Supp. 19, 22 (D. Mass. 1997); *Anderson Foreign Motors, Inc. v. New England Toyota Distrib., Inc.*, 475 F. Supp. 973, 978 (D. Mass. 1979).[8]  Although defendants devote much energy in their briefing to the injunctive component of reach and apply, they make no mention of the threshold procedural requirements under sections 3(6) and (7).  Thus, the Court need not reach the issue of injunctive relief.

Defendants have also not cited any other law that would authorize a reach-and-apply order under these circumstances.[9]  To the extent they seek a non-statutory reach-and-apply action, this generally requires, among other things, that the "creditor ha[s] secured judgment." *De Prins v. Michaeles*, 236 F. Supp. 3d 482, 488 (D. Mass. 2017) (citing *Cavadi v. DeYeso*, 458 Mass. 615, 625 (2011)).

For the foregoing reasons, defendants' motion to reach and apply will be denied without prejudice.

---

[8] Defendants also fail to point out that these two decisions were abrogated by the First Circuit, which regarded *Hasbro* and *Anderson Foreign Motors* as "wrongly decided" and "not fairly representative of the genre" to the extent they applied state standards rather than the traditional four-part test for a preliminary injunction under Fed. R. Civ. P. 65.  *Charlesbank Equity Fund II v. Blinds To Go, Inc*., 370 F.3d 151, 160 (1st Cir. 2004).

[9] During oral argument, defendants offered *Geehan v. Trawler Arlington, Inc.*, 371 Mass. 815 (1977) in support of their motion to reach and apply.  However, the requested relief in *Geehan* concerned a final judgment already entered in a tort case.  *Id*. at 816-17.

**III.    Conclusion**

For the foregoing reasons, defendants' Motion for Injunctive Relief [Docket No. 208] and Motion for Real Estate Attachment and Seizure of Vehicles [Docket No. 210] are GRANTED in part and DENIED in part. Defendants' Motion to Reach and Apply Interests in LLCs [Docket No. 217] is DENIED without prejudice. It is hereby ORDERED as follows:

1. Plaintiff BRT Management, LLC, and all persons or entities with knowledge of this Order acting in concert with it, are hereby enjoined from any sale, transfer, conveyance, or encumbrance of its property or other assets, other than in the ordinary course of business, such as payments to sub-contractors, government entities, lenders, employees, and vendors. BRT Management, LLC will not be permitted to make any payments or transfers to Brian Wallace, or any other members of BRT Management, LLC, any of Brian Wallace's family members, or any persons or entities controlled by or affiliated with them. Such actions will, however, be permitted if BRT Management, LLC's unencumbered net assets, after any such sale, transfer, conveyance, or encumbrance, not including good will, would total not less than $8,000,000.

2. Plaintiff Brian Wallace, and all persons or entities with knowledge of this Order acting in concert with him, are hereby enjoined from any sale, transfer, conveyance, or encumbrance of his property or other assets that would have the effect of reducing the value of his unencumbered net assets below $378,828.25.

3. Pursuant to Mass. R. Civ. P., Rule 4.1, a writ of attachment shall issue as to real property and vehicles of Brian Wallace in Massachusetts, with the exception of his Volkswagen Touareg, in the amount of $378,828.25, in order to satisfy the likely final judgment in this case.

**So Ordered.**


Dated: January 10, 2022               /s/ F. Dennis Saylor
4:00 p.m.                             F. Dennis Saylor IV
Boston, Massachusetts                 Chief Judge, United States District Court