UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRT MANAGEMENT LLC, | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim Defendant, | ) | |
| | ) | Civil Action No. |
| v. | ) | 17-10005-FDS |
| | ) | |
| MALDEN STORAGE, LLC and PLAIN AVENUE STORAGE, LLC, | ) | |
| | ) | |
| Defendants/ | ) | |
| Counterclaim Plaintiffs/ | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIAN WALLACE, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS'
PETITION FOR ATTORNEYS' FEES AND COSTS**

**SAYLOR, C.J.**

This is a petition for attorneys' fees and costs, arising out of a dispute between an owner and a contractor over the construction of two self-storage facilities, one in New Rochelle, New York, and one in Malden, Massachusetts. Plaintiff and counterclaim defendant BRT Management, LLC is the contractor, and third-party defendant Brian Wallace is the principal of BRT. Defendants, counterclaim plaintiffs, and third-party plaintiffs Plain Avenue Storage, LLC and Malden Storage, LLC are entities created by the effective owner, a company doing business as Banner Real Estate Group. This matter was tried to the Court without a jury. On September 10, 2021, the Court found in favor of Plain Avenue Storage and Malden Storage on all of BRT's

claims and several of their counterclaims and third-party claims. The Court also awarded Plain Avenue Storage and Malden Storage reasonable costs and expenses, including attorneys' fees, associated with this action. They have petitioned for an award of $1,900,992.50 in attorneys' fees and $156,027.69 in costs.

For the following reasons, that petition will be granted in part and denied in part, and the Court will award Plain Avenue Storage and Malden Storage attorneys' fees in the amount of $1,577,542.38, and costs of $120,626.23.

I.  **Background**

On January 3, 2017, BRT filed this action against Malden Storage, Plain Avenue Storage, and Banner Drive Storage.[1] The complaint asserted eight claims. Counts 1 through 6 alleged parallel common-law claims for breach of contract, quantum meruit and unjust enrichment, and breach of the implied covenant of good faith and fair dealing, respectively, against Plain Avenue Storage (Counts 1, 2, and 3) and Malden Storage (Counts 4, 5, and 6). Counts 7 and 8 were claims only against Malden Storage for violations of Mass. Gen. Laws ch. 149, § 29E, concerning construction contracts (Count 7), and for unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A, § 11 (Count 8).

Plain Avenue Storage and Malden Storage later counterclaimed against BRT and filed a third-party complaint against Wallace. The amended counterclaim asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, tortious interference with advantageous relations, and fraud by Plain Avenue Storage (Counts 1 through 5) and by Malden Storage (Counts 7 through 11). The amended counterclaim also asserted state-

---

[1] On August 7, 2017, the Court granted an assented-to motion to dismiss Banner Drive Storage from the litigation.

law statutory claims against BRT for deceptive business acts and practices under N.Y. Gen. Bus. Law § 349 (Count 6), and for unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A, § 11 (Count 12).

The amended third-party complaint alleged claims against Wallace for conversion, tortious interference with advantageous relations, and fraud, respectively, by Plain Avenue Storage (Counts 3, 4, and 5) and by Malden Storage (Counts 9, 10, and 11).

The matter was tried to the Court without a jury between April 26 and May 6, 2021. On September 10, 2021, the Court issued its Findings of Fact and Conclusions of Law. The Court found in favor of Plain Avenue Storage and Malden Storage on all of BRT's claims and several of their counterclaims and third-party claims. (Findings of Fact & Conclusions of Law ¶¶ 313-21). BRT and Wallace were found liable for damages in excess of $7 million and $378,000, respectively.[2]

Plain Avenue Storage and Malden Storage were also awarded reasonable costs and expenses, including reasonable attorneys' fees, associated with this action. That award was premised on the Malden and New Rochelle contracts, which provided that if a claim arising out of the contract was decided by litigation, the prevailing party in that dispute was entitled to receive "all of its reasonable costs and expenses incurred in connection with such litigation, . . . including reasonable attorneys' fees, filing fees, expert witness fees, discovery expenses, and any other reasonable costs incurred in prosecuting or defending" the action. (Ex. 1026 at 37; Ex. 1182 at 31).[3] They have petitioned for an award of $1,900,992.50 in attorneys' fees and

---

[2] The Court made a finding of joint and several liability against BRT and Wallace for conversion, fraud, and tortious interference with advantageous relations.

[3] Plain Avenue Storage and Malden Storage are unquestionably the "prevailing parties" in this lawsuit. They defeated all of BRT's claims and prevailed on their counterclaims for breach of contract, tortious interference with advantageous relations (as to Malden Storage), conversion, and fraud. *See Bardon Trimount, Inc. v. Guyott*, 49 Mass. App. Ct. 764, 778 (2000) (stating that term "prevailing party" in contract providing for attorneys' fees should

$156,027.69 in costs.  BRT has not filed an opposition or any other pleadings responsive to the petition.

## II.     Analysis

### A.     Method for Calculating Attorneys' Fees

Where "the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law." *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010).[4]  Thus, Massachusetts law applies to the Malden contract and New York law applies to the New Rochelle contract.

"Massachusetts generally follows the 'American Rule' and denies recovery of attorney's fees absent a contract or statute to the contrary." *Police Com'r of Bos. v. Gows*, 429 Mass. 14, 17 (1999).  Where, however, a contract provides for recovery of attorneys' fees, the First Circuit has noted that Massachusetts law permits two different approaches:  the lodestar and multi-factor analysis. *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 21 (1st Cir. 2012). Under the lodestar approach, the court calculates an award "by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate." *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 (1993).  The court may then adjust the lodestar calculation upward or downward.

The second permissible approach is a multi-factor analysis set forth by the Supreme Judicial Court in *Cummings v. National Shawmut Bank of Bos.*, 284 Mass. 563 (1934).  Under

---

be given "common sense meaning," such as "party in whose favor judgment enters"); *Wiederhorn v. Merkin*, 952 N.Y.S.2d 478, 481 (App. Div. 2012) (noting that "[t]he party who prevails with respect to 'the central relief sought' is considered the prevailing party").

[4] Choice of law is also embedded in this determination.  Because this is a diversity action, the Court will apply the choice-of-law rules of Massachusetts, the forum state.  *See Volkswagen Grp. of Am., Inc. v. Peter McNulty Law Firm*, 692 F.3d 4, 17 (1st Cir. 2012).  In determining choice of law, "Massachusetts courts generally uphold the parties' choice" as expressed by contract.  *Taylor v. E. Connection Operating, Inc.*, 465 Mass. 191, 195 (2013). Both the Malden contract and New Rochelle contract provide that the governing law is "the place where the Project is located." (Ex. 1026 at 50; Ex. 1182 at 44).

that approach, to determine reasonable attorneys' fees, courts should consider

> the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by [the] controversy, and the results secured.

*Id.* at 569.

New York also follows the "American Rule," but "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987). To determine whether the requested attorneys' fees are reasonable, New York courts generally use the lodestar method. The following factors are also relevant:

> the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.

*Id.* (quoting *Matter of Schaich's Estate*, 391 N.Y.S.2d 135, 136 (App. Div. 1977)).

Because both New York and Massachusetts permit the lodestar method, the Court will use it to calculate a reasonable attorneys' fee award. *See Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 526 (1st Cir. 1991) (stating that "[i]f an alternative method is not expressly dictated by applicable law, we have customarily found it best to calculate fees by means of the [lodestar] time-and-rate method"). However, it will also consider the additional factors set forth under Massachusetts and New York law, which, in any event, tend to overlap. *See Killeen v. Westban Hotel Venture, LP.*, 69 Mass. App. Ct. 784, 791 (2007) (noting that *Cummings* factors "continue to be useful guides to determining time reasonably spent when applying the lodestar methodology"); *F.H. Krear & Co.*, 810 F.2d at 1263 (discussing *Schaich* factors and lodestar

5

together).

### B.     Determination of Reasonable Attorneys' Fees

Defendants were represented throughout the litigation by attorneys John Brazilian and Alec Pine of Butters Brazilian LLP. The litigation team also included two paralegals, Julie A. Jackson and Stephanie Yepes; one support staff member, Marie-Claire Rochat; and limited assistance from other attorneys at Butters Brazilian, including Matthew D. Thompson, Megan Perrotta (Emanuelson), Patrick Hanley, and Thomas Butters. The total requested award is $1,900,992.50.[5]

#### 1.      Hours Reasonably Expended

The Court first considers the number of hours reasonably expended on the litigation. In support of their petition, defendants have submitted affidavits from attorneys Brazilian, Pine, and Perrotta (Emanuelson). Each affidavit avers that billing records were made contemporaneously with the work performed. They have also submitted nearly 200 pages of billing records.

The documents show that attorney Pine recorded 2488.25 hours; attorney Brazilian recorded 1423.75 hours; and attorney Perrotta (Emanuelson) recorded 441.70 hours. Support staff and paralegal hours totaled 194.10 hours, and the ancillary work from attorneys Thompson, Hanley, and Butters amounted to 10.60 hours.

This case began more than five years ago, and the litigation has been somewhat extensive. The complaint asserted eight claims against defendants, and defendants later asserted twelve counterclaims and third-party claims. Discovery included 26 depositions and numerous disputes resulting in motions to compel. Motion practice included a motion to dismiss, cross-motions for summary judgment, motions to compel, and motions in limine. The matter

---

[5] This amount does not include exclusions and write-offs in the amount of $27,571.20.

concluded with a nine-day bench trial.

Nonetheless, there are multiple indications that the hours requested are somewhat excessive. For example, attorney Pine appears to have spent more than 200 hours related to defendants' motion for summary judgment, their opposition, and reply. While summary judgment is undoubtedly an important stage in litigation, expending 200 hours, or five full weeks, is not reasonable under the circumstances of this case. The issues presented in summary judgment were not unusually complicated. Plaintiff's motion for partial summary judgment was withdrawn before defendants even opposed it. And defendants' motion was limited to their counterclaims and third-party claims for conversion and fraud.

There were also substantial apparent inefficiencies and overlap between counsel. Obviously, some natural duplication is inevitable in performing legal work, such as having an associate conduct legal research and outline or draft a brief for a senior attorney to review and revise. However, such duplication must not be excessive. As mentioned, attorney Pine spent more than 200 hours preparing for summary judgment and reviewing materials. Yet attorney Brazilian also spent 17.50 hours reviewing the materials and conferencing with attorney Pine before the summary judgment argument. He then billed an additional six hours for "representation in USDC for Summary Judgment argument" and "reviewing materials." (Pet. Ex. 2 at 87). As another example, attorney Perrotta (Emanuelson) billed eight hours to, among other things, "finalize Motion for Protective Order" and "revise Motion for Protective Order." (*Id.* at 31-32). Yet attorney Brazilian also billed four hours relating to "[r]eview[ing] and revis[ing] Motion for Protective Order." (*Id.*). The final product was a simple motion and five-page memorandum that almost certainly did not merit twelve hours of overlapping work.

Moreover, the vagueness of many time entries makes it difficult for the Court to

determine what specific tasks they performed and how efficiently they performed them. *See F.H. Krear & Co.*, 810 F.2d at 1265 (stating that under New York law, "the burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required"); *Roberts v. Dep't of State Police for Com.*, 2002 WL 31862711, at *4 (Mass. Super. Sept. 26, 2002) (providing that in fee-shifting context, counsel must generally submit "detailed contemporaneous time records"). While defendants' attorneys periodically made entries in tenths-of-an-hour increments, the majority are only broken down by quarter-hour, half-hour, or hour increments. The entries are also obscured by extensive block-billing practices, and at times, vague or broad entries. Three examples from attorney Pine's entries are illustrative:

> On September 18, 2018, Pine billed 7.00 hours for one entry: "Conference with Mr. Brazilian to develop strategy for summary judgment; legal research on quantum merit [sic] counts and conversion counts to evaluate legal standards for summary judgment; review contracts to evaluate choice of law provisions."
>
> On July 29, 2019, Pine billed 6.50 hours for one entry: "Supplement counterclaims section of joint pre-trial memorandum; update statement of damages; evaluate Mr. Wallace's responses to requests for admissions to interrogatories to develop strategy for stipulations section of join[t] trial memorandum."
>
> On January 27, 2021, Pine billed 6.00 hours for one entry: "Evaluate exhibits submitted with BRT opposition to Banner Motion in Limine; draft Reply to BRT Opposition to Banner Motion in Limine to prepare for filing; conference call with Mr. Brazilian to evaluate Reply strategy and strategy for upcoming hearing on Motions in Limine; review BRT Motion in Limine 1 to develop strategy for oral argument at upcoming hearing."[6]

(Pet. Ex. 2 at 58; 96; 151).

Accordingly, after careful consideration of the hourly records, and in the absence of any

---

[6] Attorney Perrotta (Emanuelson) also had vague block-billing entries, such as 7.50 hours for "Review and organize file; review AIA contract for Malden and documents from client; telephone conferences with Mr. Brazilian and Ms. Nichols; conferences with Mr. Brazilian; begin drafting Chronology; email correspondence with Mr. Brazilian and clients." (Pet. Ex. 2 at 4-5).

briefing from BRT, the Court will reduce the hours of attorneys Pine, Brazilian, and Perrotta (Emanuelson) by 15% as excessive under the circumstances. It will leave paralegal and support staff hours unchanged. As to the 10.60 hours requested by various other attorneys at Butters Brazilian, the Court finds those hours reasonable under the circumstances. In total, attorney Pine's 2488.25 hours will be reduced to 2115.01 hours, attorney Brazilian's 1423.75 hours will be reduced to 1210.19 hours, and attorney Perrotta (Emanuelson)'s 441.70 hours will be reduced to 375.45 hours.[7] Those hours appear to reasonably reflect the complexity of the matter (involving two large-scale construction projects and contracts with different governing laws), the amount at stake in this litigation, and the results secured (more than $7 million). *See Cummings*, 284 Mass. at 569; *F.H. Krear & Co.*, 810 F.2d at 1263.

### 2. **Reasonable Hourly Rates**

The Court must also consider the reasonableness of the requested rates compared to fees charged by other attorneys for similar services.

Attorney Pine has requested $300 per hour for the beginning portion of his representation. This rate was later increased to $325, and eventually $425 per hour. Attorney Pine is a partner at Butters Brazilian and has been practicing law since 2012. (Aff. of Pine ¶¶ 9; 12). He graduated from Hofstra University School of Law. (*Id.* ¶ 4).

Attorney Brazilian has requested $550 per hour, with a rate increase to $650 while litigation was pending. He is also a partner at Butters Brazilian and has been practicing law for 50 years. (Aff. of Brazilian ¶¶ 1; 3). He graduated from Suffolk Law School. (*Id.* ¶ 2).

Attorney Perrotta (Emanuelson) has requested a rate of $375. She has been practicing law since 2001 and graduated from Suffolk Law School. (Aff. of Emanuelson ¶¶ 2; 4). She

---

[7] Those adjusted hours do not reflect the further reduction of 3%, as provided below.

worked as an attorney at Butters Brazilian until June 2018, when she took a position at an investment company.  (*Id.* ¶ 5).

Defendants were charged counsels' standard rates for litigation matters.  Defendants have submitted affidavits from attorneys Brazilian, Pine, and Perrotta (Emanuelson).  Each affidavit describes their relevant experience and education, as provided above.  They have also supplied an affidavit from Peter E. Gelhaar, an attorney in Boston, who avers that the rate of $650 charged by attorney Brazilian in this matter was fair, reasonable, and consistent with rates charged by lawyers in Boston for complex commercial and business litigation matters. (Aff. of Gelhaar ¶¶ 6-7).

The rates appear to be generally reasonable and are not challenged by plaintiff.  The rates also appear to take into account the lawyers' experience, abilities, and reputation and are commensurate with rates charged by similarly situated lawyers in the community.  *See Cummings*, 284 Mass. at 569; *F.H. Krear & Co.*, 810 F.2d at 1263.

The Court therefore will not modify its calculation based on the reasonableness of the rates charged by defendants' attorneys.

### 3. Adjustments

Having determined the hours reasonably expended in this litigation, as well as reasonable hourly rates, the Court will next consider whether any other adjustments are appropriate.

Most importantly, the hours requested by defendants not only concern litigation against BRT Management, LLC, but also Brian Wallace.  It is difficult to quantify and separate the time spent litigating claims of conversion, fraud, and tortious interference against Wallace, especially considering that those same claims were also brought against BRT on the same set of facts and legal theories.  Nevertheless, the Court finds it necessary to make some adjustment that approximates time spent litigating issues concerning Wallace only, without any overlap as to

BRT. Under the circumstances, the Court will reduce the requested hours of attorneys Pine, Brazilian, and Perrotta (Emanuelson) by an additional 3% to account for litigation against Wallace.

In addition, the Court will exclude all amounts incurred to prepare the present petition for attorneys' fees and costs. *See F.H. Krear & Co.*, 810 F.2d at 1266 (stating that "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves"). The final award will accordingly be reduced by $8,458.75.

In summary, after a review of defendants' requested fees, and no objection having been raised by plaintiff, the Court will award fees in the amount of $1,577,542.38, which are reasonable in light of the results obtained.

### C. Determination of Reasonable Costs

Defendants have also petitioned for an award of $156,027.69 in costs. Their request is supported by billing records that itemize each cost claimed, as well as invoices from their damages expert at Berkeley Research Group. The requested costs include expert witness fees, filing fees, mail costs, courier fees, hotel and transportation expenses, transcript costs, and consultant fees.

Cost awards are typically governed by federal statute. *See* 28 U.S.C. § 1920. Here, however, the contracts themselves provide for recovery of costs. Both the Malden and New Rochelle contracts contain the same clause on attorneys' fees and costs, which states that the prevailing party is entitled to receive "all of its reasonable costs and expenses incurred in connection with such litigation, . . . including reasonable attorneys' fees, filing fees, expert witness fees, discovery expenses, and any other reasonable costs incurred in prosecuting or defending" the action. (Ex. 1026 at 37; Ex. 1182 at 31).

11

The Court will honor the parties' bargain and award reasonable costs that are contemplated by that contractual provision. *Cf. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (stating that federal courts are bound by limitations set forth in 28 U.S.C. § 1920 "absent explicit statutory or contractual authorization"); *Monsanto Co. v. David*, 516 F.3d 1009, 1017 (Fed. Cir. 2008) (noting that "28 U.S.C. § 1920 does not set maximum costs around which private parties may not contract"); *Sherman St. Assocs., LLC v. JTH Tax, Inc.*, 2011 WL 5925063, at *4 (D. Conn. Nov. 21, 2011) (awarding costs pursuant to contractual provision, including travel and meal expenses, courier fees, and overnight delivery fees).

To begin, the contracts specifically provide for expert witness fees. Defendants have requested $92,520.21 in expert fees, which addressed the calculation of damages as well as the evaluation of pay-application procedures and compliance issues. Under the circumstances, the expert fees appear to be reasonable, and the Court will award defendants the full amount.

The contracts also provide for filing fees, which the Court will permit, and discovery expenses. Discovery expenses would reasonably include the deposition transcripts requested by defendants. They do not, however, include trial transcripts in the amount of $2,365.34.

The remaining amounts are only permissible if they are "other reasonable costs incurred in prosecuting or defending" this action, as contemplated by the contracts. (Ex. 1026 at 37; Ex. 1182 at 31). The Court will permit the requested courier, constable, and overnight mailing fees, which are relatively modest and reasonable. It will also permit the travel and transportation expenses incurred throughout the litigation, including travel for depositions.

Finally, defendants have requested certain consulting fees from Key Discovery, apparently related to litigation support and trial preparation. The requested amounts from Key Discovery total $33,036.12 and include:

>Bate Stamp and Prepare Documents for Production: $2,760.00
>Format and Print Excel Spreadsheets in Color: $339.47
>Scan/Bate Stamp Documents: $1,023.62
>Scan and Code Medium Litigation: $422.53
>Exhibit/Document Printing, Assembly, and Create Binders: $4,321.00
>Trial Preparation with Coding of Exhibits and Meetings: $4,584.00
>Trial Preparation with Coding of Exhibits and Meetings: $3,976.50
>Trial Presentation of Exhibits (Day 1): $1,343.00
>Trial Presentation of Exhibits (Day 2): $1,720.50
>Trial Presentation of Exhibits (Day 3): $1,293.00
>Trial Presentation of Exhibits (Day 4): $3,552.00
>Trial Presentation of Exhibits (Day 5): $1,078.00
>Trial Presentation of Exhibits (Day 6): $2,192.00
>Trial Presentation of Exhibits (Day 7): $2,377.00
>Trial Presentation of Exhibits (Day 8): $1,440.50
>Trial Presentation of Exhibits (Day 9): $613.00

(Pet. Ex. 3). Defendants have submitted no invoices from Key Discovery that explain these charges. They also have not explained the nature of the services provided, including what "Trial Presentation of Exhibits" entails during a remote bench trial, nor why these costs are reasonable under the circumstances. Accordingly, the Court will exclude the amounts to Key Discovery for $33,036.12, because they do not appear to be "reasonable costs" as contemplated by the contracts.

In summary, after a review of defendants' costs, and no objection having been raised by plaintiff, the Court will award reasonable costs in the amount of $120,626.23.[8]

### D.     Liability of BRT and Wallace

Because defendants' entitlement to reasonable attorneys' fees and costs flows from the contracts governing the New Rochelle and Malden projects, only BRT is liable for attorneys' fees and costs awarded in this Order. Wallace was not a party to those contracts, and therefore he is not personally liable for attorneys' fees or contractual costs. Ordinarily, defendants would

---

[8] A complete accounting of the Court's calculations can be found in Attachment 1.

13

be entitled to recover statutory costs against Wallace pursuant to 28 U.S.C. § 1920. However, defendants have not requested statutory costs, and in any event, such an award could result in double recovery of the contractual costs.

## III.     Conclusion

For the foregoing reasons, defendants' petition for attorneys' fees and costs is GRANTED in the amount of $1,577,542.38 in fees and $120,626.23 in costs, and otherwise is DENIED.

**So Ordered.**

Dated: January 19, 2022

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

## **ATTACHMENT 1**

|  |  | Hours | Rate | Total |
|---|---|---|---|---|
|  | Attorney Pine | 491.18 | $300 | $147,354.00 |
|  |  | 683.47 | $325 | $222,127.75 |
|  |  | 865.72 | $425 | $367,928.88 |
|  |  |  |  | $737,410.63 |
|  | Attorney Brazilian | 714.84 | $550 | $393,159.25 |
|  |  | 452.64 | $650 | $294,216.00 |
|  |  |  |  | $687,375.25 |
|  | Attorney Perrotta (Emanuelson) | 362.19 | $375 | $135,822.75 |
|  | Other Attorneys |  |  | $4,965.00 |
|  | Paralegal and Support Staff |  |  | $20,427.50 |
| Preliminary Total |  |  |  | $1,586,001.13 |
| Fees re: Petition |  |  |  | ($8,458.75) |
| **Total Fee Award** |  |  |  | **$1,577,542.38** |
|  |  |  |  |  |
| Requested Costs |  |  |  | $156,027.69 |
| Key Discovery |  |  |  | ($33,036.12) |
| Trial Transcripts |  |  |  | ($2,365.34) |
| **Total Cost Award** |  |  |  | **$120,626.23** |