**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
)
**BRT MANAGEMENT, LLC,**                   )
)
    **Plaintiff and**                      )
    **Counterclaim Defendant,**            )    **Civil Action No.**
)
    **v.**                                )    **17-10005-FDS**
)
**MALDEN STORAGE, LLC and PLAIN**          )
**AVENUE STORAGE, LLC,**                    )
)
    **Defendants,**                        )
    **Counterclaim Plaintiffs, and**       )
    **Third-Party Plaintiffs,**            )
)
    **and**                                )
)
**BRIAN WALLACE,**                          )
)
    **Third-Party Defendant.**             )
_____)

**MEMORANDUM AND ORDER ON**
**<u>SUBJECT-MATTER JURISDICTION</u>**

**SAYLOR, C.J.**

    This action involves a dispute arising out of construction contracts to build storage facilities.  The present aspect of this dispute concerns the existence of subject-matter jurisdiction.

    On May 22, 2023, the First Circuit vacated the Court's judgment in favor of Malden Storage, LLC and Plain Avenue Storage, LLC and remanded for the Court to determine whether it had subject-matter jurisdiction over the matter.  Malden and Plain Avenue have moved to confirm jurisdiction and re-enter judgment.  BRT Management, LLC and Brian Wallace have

moved to dismiss the action for lack of jurisdiction.[1]

The question at the heart of the dispute is simple:  is there complete diversity of citizenship within the meaning of 28 U.S.C. § 1332?  The parties on one side are citizens of Massachusetts:  Brian Wallace is a Massachusetts resident, and BRT Management, LLC is a limited liability company whose only member (Wallace) is a Massachusetts resident.  The issue is whether all of the parties on the other side are diverse—that is, citizens of states other than Massachusetts.

That seemingly simple question is, in this case, extraordinarily complicated.  Malden and Plain Avenue are limited liability companies.  For purposes of diversity jurisdiction, LLCs are treated like partnerships—that is, their citizenship is that of their members.  Here, the ownership structure of Malden and Plain Avenue is a complex maze of layer upon layer of LLCs, trusts, limited partnerships, and general partnerships, plus a single corporation.

To make matters worse, counsel for plaintiffs have adopted a somewhat casual approach to the issue of subject-matter jurisdiction since the beginning of this case.  Despite their presumably strong interest in upholding the verdict, and despite *six* opportunities to get it right— three at the outset of the case, two more at the Court of Appeals, and one more after remand— counsel have repeatedly struggled to put forth proof of the facts necessary to establish diversity. Indeed, counsel have failed to address directly the principal question at the heart of the inquiry: whether the individuals in the ownership structure are domiciliaries of states other than Massachusetts.  Among other things, that has resulted in this Court having to address multiple factual and legal issues that could easily have been resolved through a more diligent approach to

---

[1] Although Malden and Plain Avenue are defendants, counterclaim-plaintiffs, and third-party plaintiffs, they prevailed on their counterclaims and the third-party complaint, and seek to affirm jurisdiction in order to uphold that verdict.  For the sake of simplicity, therefore, this memorandum and order will refer to them as "plaintiffs," and BRT and Wallace as "defendants."

creating an evidentiary record.

For their part, counsel for defendants have declined to take any jurisdictional discovery or submit any evidence, and thus have adduced no facts to suggest a lack of diversity. Instead, they rely entirely on legal challenges, both as to evidentiary issues (such as the use of hearsay) and the sufficiency of the evidence.

It is certainly true, in this context, that the diversity inquiry is hypertechnical, entirely divorced from the merits of the dispute, and indeed entirely divorced from the purposes of diversity jurisdiction. Nonetheless, the inquiry is critical. Subject-matter jurisdiction governs the power of the court to act. If it is absent, all proceedings in this matter, including the trial and the judgment, are entirely void and without effect.

In any event, and for the reasons that follow, the Court concludes that complete diversity exists. Accordingly, the motion to confirm jurisdiction and re-enter judgment will be granted, and the motion to dismiss will be denied.

## I.   **Background**

On January 3, 2017, BRT Management, LLC filed this action against Malden Storage, LLC; Plain Avenue Storage, LLC; and Banner Drive Storage, LLC.[2] The complaint asserted eight claims, all arising under Massachusetts law. It asserted that jurisdiction existed under 28 U.S.C. § 1332, and that there was complete diversity of citizenship and an amount in controversy in excess of $75,000. (Compl. ¶ 9).

On April 6, 2017, the Court ordered BRT to show cause why the action should not be dismissed for lack of subject-matter jurisdiction because it had failed to allege that the citizenship of every member of BRT was diverse from every member of Malden, Plain Avenue,

---

[2] Malden and Plain Avenue subsequently filed counterclaims against BRT and third-party defendant Brian Wallace.

and Banner Drive Storage, LLC. (ECF No. 17). BRT responded to the order to show cause by alleging that its sole member is Wallace, a resident of Massachusetts; that the sole member of Malden is C Banner Storage, LLC; that the sole member of Plain Avenue is also C Banner Storage, LLC; and that the sole member of Banner Drive Storage, LLC, is Banner Storage Holding, LLC. (ECF No. 22).

On May 1, 2017, the Court again ordered BRT to show cause why the action should not be dismissed for lack of subject-matter jurisdiction because it had failed to identify the citizenship of the members of C Banner Storage, LLC and Banner Storage Holding, LLC. (ECF No. 23). In response, BRT requested limited discovery into the citizenship of C Banner Storage, LLC and Banner Storage Holding, LLC, which the Court permitted. (ECF No. 26).

On August 2, 2017, the parties stipulated that there was complete diversity of citizenship between BRT and Wallace, on the one hand, Malden and Plain Avenue, on the other, but that there was no diversity between BRT and Banner Drive Storage, LLC. (ECF No. 29). The parties further stipulated that the sole member of both Malden and Plain Avenue—C Banner Storage, LLC—is B-Dev Manager, LLC. (*Id.*). The stipulation was supported by an affidavit of K.E.M., the vice president of B-Dev Manager, LLC. (K.E.M. Aff., ECF No. 29-1).[3] The parties filed an assented-to motion to dismiss Banner Drive Storage, LLC, which was granted. (ECF Nos. 30, 32).

It later became apparent that the facts provided to the Court in connection with that stipulation were not, in fact, sufficient to establish complete diversity. In the meantime, the matter was tried to the Court without a jury between April 26 and May 6, 2021. On September

---

[3] The public version of this memorandum and order will use initials rather than names in order to protect the private financial information of individuals who are not directly parties to this action.

4

10, 2021, the Court issued its findings of fact and conclusions of law.  The Court found in favor of Malden and Plain Avenue on all of BRT's claims and several of their counterclaims and third-party claims.  (ECF No. 260 ¶¶ 313-21).

On February 14, 2022, the Court entered a final judgment and order.  BRT was found liable for damages in excess of $10 million and BRT and Wallace were found liable jointly and severally for damages in excess of $600,000 including interest.[4]

On May 13, 2022, BRT filed a notice of appeal of the final judgment and order.

On December 19, 2022, the First Circuit entered an order directing the parties to file an affidavit of jurisdictional facts sufficient to show their citizenship as of the date the action was filed in the district court.

On December 21, 2022, Wallace responded that at the relevant time he was a Massachusetts resident and the sole member and manager of BRT.  Also on December 21, 2022, Malden and Plain Avenue filed a second affidavit signed by K.E.M.  K.E.M. affirmed that, at the relevant time, B-Dev Manager, LLC had one member, Banner Development, LLC, which had no members who were citizens of Massachusetts.

On December 30, 2022, BRT moved to remand to allow the parties to conduct limited discovery on the issue of subject-matter jurisdiction.  In support of their sealed response, Malden and Plain Avenue filed an affidavit of A.L.L., General Counsel for Banner Apartments, LLC, and in-house counsel for affiliated companies, including defendants.  (First A.L.L. Aff.).  The A.L.L. affidavit made corrections and provided additional information concerning the ownership of defendants.

---

[4] The Court made a finding of joint and several liability against BRT and Wallace for conversion, fraud, and tortious interference with advantageous relations.

On May 22, 2023, the First Circuit vacated the judgment and remanded the case to this Court to determine whether subject-matter jurisdiction exists. Among other things, the court noted: "Malden and Plain's initial filings were inadequate because, as we stated in our order requesting jurisdictional facts, they did not show the members of all the members of defendant LLCs." *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 697 (1st Cir. 2023). After the order to demonstrate jurisdiction, it observed that defendants' "latest filing is still inadequate for the same reason," specifically, "[f]or each trust, defendants provided the citizenship of only the trustee without describing the nature of the trust. This is insufficient to determine the trusts' citizenships." *Id.*

On remand, plaintiffs produced two additional affidavits—a second affidavit of A.L.L. (the "Second A.L.L. Affidavit"), and an affidavit of S.P.S., legal counsel to C Banner Investments, III (the "S.P.S. Affidavit"), with approximately 1,700 pages of exhibits. As set forth below, the two affidavits outlined the ownership structure in some detail. Although both sides were afforded an opportunity to take jurisdictional discovery, neither chose to do so.

Plaintiffs have now moved to confirm subject-matter jurisdiction and re-enter the judgment. Defendants have cross-moved to dismiss for lack of subject-matter jurisdiction. [5]

---

[5] Defendants do not cite any rule of procedure to indicate the nature of their motion. However, given the post-judgment procedural posture of this issue, it appears "[t]he matter of jurisdiction . . . should be aired more fully under the aegis of Rule 60(b)(4)." *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d 109, 116 (1st Cir. 1990). That rule provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void." Fed. R. Civ. P. 60(b)(4). Even if a "post[-]judgment motion d[oes] not expressly invoke [R]ule 60(b)(4), post[-] judgment relief generally will not be deemed barred for mere misdesignation of the proper [R]ule 60(b) subdivision, particularly where, as here, the underlying issue may be jurisdictional." *Mitchell v. Hobbs*, 951 F.2d 417, 421 n.5 (1st Cir. 1991) (internal citations omitted); *see also Hospital Mortg. Grp., Inc. v. Parque Indus. Rio Canas, Inc.*, 653 F.2d 54, 55 (1st Cir. 1981) (noting treatment of a "Motion for Special Appearance to Impugn Jurisdiction and Requesting Postponement of Scheduled Auction" as a Rule 60(b)(4) motion).

## II.   Legal Standards

### A.   Diversity Jurisdiction

"The existence of subject-matter jurisdiction 'is never presumed.'"  *Fafel v. Dipaola*, 399

F.3d 403, 410 (1st Cir. 2005) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1988)).

The burden of establishing diversity jurisdiction rests on the party invoking federal jurisdiction.

*Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 51 (1st Cir. 2021) (citing *Massachusetts Sch. of L.*

*at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 33 (1st Cir. 1998)).

Diversity jurisdiction under 28 U.S.C. § 1332 requires "complete diversity of citizenship

as between all plaintiffs and all defendants."  *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st

Cir. 2008); *see Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005).  Citizenship is determined as

of the time the suit is filed.  *BRT*, 68 F.4th at 694 n.6; *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d

29, 31 (1st Cir. 2008).

The citizenship of a natural person is determined by the state in which he or she is

domiciled.  *BRT*, 68 F.4th at 695; *see Aponte-Dávila v. Municipality of Caguas*, 828 F.3d 40, 46-

49 (1st Cir. 2016).  "A person's domicile 'is the place where he has his true, fixed home and

principal establishment, and to which, whenever he is absent, he has the intention of returning.'"

*Rodríguez-Díaz v. Sierra-Martínez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (quoting Charles

Allen Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure

§ 3612 (2d ed. 1984)).

The citizenship of a corporation is determined both by its place of incorporation and

principal place of business.  *See Bearbones, Inc. v. Peerless Indem. Ins. Co.*, 936 F.3d 12, 15 (1st

Cir. 2019) (citing 28 U.S.C. § 1332(c)(1)).

The citizenship of a limited liability company is determined by the citizenship of all of its

members.  *BRT*, 68 F.4th at 694; *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661

F.3d 124, 125 (1st Cir. 2011).

The citizenship of a general or limited partnership is determined by the citizenship of all of its members. *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006).

The citizenship of a trust is somewhat more complicated. *See BRT*, 68 F.4th at 697-98. The Supreme Court has observed that "confusion regarding the citizenship of a trust is understandable and widely shared." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016). In *Americold*, it held that the citizenship of a real estate investment trust is derived from the citizenship of its members. *Id.* at 380-82. *Americold* has been read to mean that the citizenship of a trust is derived differently based on the nature of the trust. *BRT*, 68 F.4th at 697 (collecting cases). As summarized by the First Circuit, "a 'traditional' trust—one that 'exists as a fiduciary relationship and not as a distinct legal entity'—takes the citizenship of its trustee, while a trust which does exist as a separate legal entity takes the citizenship of all its members." *Id.* (citing *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 39 (3d Cir. 2018); *Wang ex rel. Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 494 (D.C. Cir. 2016); *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 729-32 (2d Cir. 2017)).

Where there are different layers to organizational structures, such as where the members of an LLC are other LLCs, the inquiry requires an examination into the citizenship of each layer of ownership. *BRT*, 68 F.4th at 696; *D.B. Zwirn*, 661 F.3d at 126-27.

**B.      Jurisdictional Challenges**

"There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges." *Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151, 162 (1st Cir. 2007); *see also Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In simplified terms, facial

challenges involve an examination of the complaint, and factual challenges involve a review of the jurisdictional evidence. *Torres-Negron*, 504 F.3d at 162.

This dispute involves a factual, rather than a facial, challenge. Normally, factual challenges require the court to engage in a two-part inquiry. *Id.* First, the court must determine whether the relevant facts that determine the court's jurisdiction are intertwined with the plaintiff's cause of action. *Id.* at 163. Second, if the relevant facts are not so entangled with the merits, the court has wide latitude. "[T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

This dispute arises in an unusual context—on remand after an appeal, rather than at the outset of a case. In addition, the First Circuit has directed that "after several rounds of jurisdictional filings, including an incorrect affidavit, there may well be cause to ask for at least some supporting documentation that would otherwise not normally be required." *BRT*, 68 F.4th at 698.

### III.    Analysis

The S.P.S. and Second A.L.L. Affidavits describe the ownership structure of plaintiffs. With one exception, that structure consists of layers of limited liability companies, limited partnerships, trusts, and individual owners.[6] As a practical matter, whether complete diversity exists turns on two factual questions: (1) the citizenship of individuals, all of whom are trustees, beneficiaries, partners, and/or members of various entities, and (2) the nature of two of the trusts, which have a beneficiary who resides in Massachusetts.

---

[6] There is a single corporation in the ownership structure, Banner Investments, Inc. (Second A.L.L. Aff. ¶ 14). There does not appear to be any dispute that it is an Illinois corporation with a principal place of business in Illinois.

The S.P.S. Affidavit, among other things, lists the "states of residency" of 17 individuals. S.P.S. states that he is a licensed attorney and legal counsel to one of the LLCs, as well as trustee for certain trusts.  (S.P.S. Aff. ¶¶ 1, 2, 10).[7]  He attests that as "counsel and trustee" he has access to "all records for the [listed] entities and individuals," which are "kept in the ordinary course of business" and that he has "knowledge of all trust beneficiaries and their residences."  (*Id.* ¶¶ 13, 14).  He also attests that all of the statements in his affidavit are "based on personal knowledge and corporate records" and that he "could testify competently as to all of the facts stated herein."  (*Id.* ¶ 15).

The Second A.L.L. Affidavit, among other things, lists the "domiciles" of 32 individuals, including the street addresses of 27 of those individuals.  (Second A.L.L. Aff. ¶¶ 14, 15; MPJ_000005-000022).  A.L.L. states that he is a licensed attorney and counsel to various entities in the ownership structure.  (Second A.L.L. Aff. ¶¶ 1, 2).  He attests that he "obtained the domicile of each individual as of January 3, 2017, from personal knowledge, from public information, by reviewing corporate records, and/or by communicating with staff, trustees, or beneficiaries."  (*Id.* ¶ 12).  He also attests that he "could testify competently as a witness to all of the facts stated herein."  (*Id.* ¶ 19).

Together with the affidavits, plaintiffs submitted more than 1,700 pages of documents. Those documents consist principally of articles of organization, limited liability company agreements, partnership agreements, trust agreements, and related documents, such as amendments and assignments of interest.

If the statements in the affidavits are accepted, there is a single individual, J.C.C., who is

---

[7] Plaintiffs explain that certain entities belong to an outside investor, C Banner Investments III LLC, who was subpoenaed for information and apparently produced only the J.C.C. trust documents.  (Pls.' Reply at 4-5).

a resident of Massachusetts.  (S.P.S. Aff. ¶ 9).  She is listed as a beneficiary of two trusts that have an ownership interest in a limited liability partnership that is part of the ownership chain. (*Id.*).  If her Massachusetts residency counts for diversity purposes, the parties are not diverse, and there is no subject-matter jurisdiction.  Whether complete diversity exists depends, in very large part, on the nature of those two trusts.

Defendants contend, in substance, (1) that the affidavits submitted by plaintiffs are inconsistent with earlier filings, and should therefore be disregarded as not credible; (2) that the affidavits contain hearsay, which is inadmissible and should be disregarded; (3) that plaintiffs have not put forth sufficient evidence of the citizenship of the relevant entities and individuals; (4) that a trust with a Massachusetts beneficiary "raises a suspicion" as to a lack of diversity; and (5) that therefore the evidence is insufficient for the court to find that complete diversity exists.

Although defendants in part challenge the accuracy of plaintiffs' evidence, their principal challenge is to its sufficiency.  Again, defendants have elected to forgo submitting any evidence of their own, and did not take any discovery on the jurisdictional issue.

A.   **Inconsistent Affidavits**

Defendants first contend that plaintiffs' affidavits are allegedly "laden with material falsehoods and inconsistencies which cast a pall of unreliability over their filings."  (Opp. at 5). The affidavits submitted by K.E.M. were indeed incomplete and incorrect, as acknowledged by plaintiffs in the January 20, 2023 A.L.L. Affidavit.  (First A.L.L. Aff. ¶ 6).  However, after the First Circuit's ruling clarifying the assertions required, the Second A.L.L. Affidavit and the S.P.S. Affidavit collectively assert a substantially more complete picture of the relevant ownership layers.  (Second A.L.L. Aff., Ex. A ("Subject to additional detail"); S.P.S. Aff. (providing additional detail)).

11

It is certainly true that the filing of affidavits containing incorrect information does not inspire confidence in the credibility of the affiant or his attention to detail.  Nonetheless, neither defendants nor the Court have found facts that controvert, or even cast serious doubt upon, the assertions of jurisdictional fact in the more recent set of affidavits.  *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (noting that defendants did not "proffer[ ] materials of evidentiary quality in support of that position"); *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021) ("If a Rule 12(b)(1) motion contests factual allegations of the complaint, the court must engage in judicial factfinding to resolve the merits of the jurisdictional claim."); *see also Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 750 (4th Cir. 2016) (deferring to the district court's finding of credibility when the opponent argued against the credibility and weight of the evidence but "offered no contradictory evidence").

Under the circumstances, the Court sees no basis to conclude that the S.P.S. and Second A.L.L. Affidavits are not credible or trustworthy, and therefore will consider them as part of the evidentiary record.

### B.   Information within Affidavits

Defendants next contend that the critical assertions of citizenship are inadequate and based on hearsay and therefore should be disregarded.  Again, that evidence consists principally of two affidavits with attached exhibits.

### 1.   Jurisdictional Evidence Generally

There is no question that, as a general matter, affidavits are competent evidence in jurisdictional inquiries.  *See, e.g.*, *Land v. Dollar*, 330 U.S. 731, 735 (1947) ("[A]s a general rule the District Court would have authority to consider questions of jurisdiction on the basis of affidavits as well as the pleadings"); *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 13

(1st Cir. 1991) (describing an affidavit which "put forth strong evidence" but was countered by documentary evidence); *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006) ("After limited discovery on the jurisdictional issue the matter might be appropriate for resolution on motion supported by affidavits, or, if a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing." (citations omitted)); *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Ord. of Police*, 920 F.2d 198, 200 (3d Cir. 1990); *Atwood v. Peterson*, 936 F.3d 835, 840 (8th Cir. 2019); *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999); *Florida Fam. Pol'y Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009); *see generally* WRIGHT & MILLER, 5B FED. PRAC. & PROC. CIV. § 1350 (3d ed.); *see also* Order of Court at 1, *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691 (December 19, 2022) (22-1389) (finding the record insufficient to demonstrate subject-matter jurisdiction based on diversity and accordingly directing the parties to file "affidavit[s] of jurisdictional facts sufficient to show their citizenship as of the date the action was filed in the federal district court").

While on occasion the First Circuit has found affidavits insufficient to support a finding of diversity jurisdiction, in those instances the party-opponent raised doubt as to the credibility of a claim of citizenship by adducing specific facts. *See, e.g., Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992) (affiant's claim of domicile contested by a postal worker's affidavit averring the claimant had submitted a change of address); *Padilla-Mangual*, 516 F.3d at 31-34 (finding absences such as failure to open a bank account or secure employment and the record of a state court complaint alleging a different domicile insufficient to undermine plaintiff's declaration of domicile); *Aponte-Dávila*, 828 F.3d 40, 45 (claim of Texas domicile contested by listing of Puerto Rico address on significant forms); *see also Shahmoon Indus., Inc. v. Imperato*,

338 F.2d 449, 451-52 (3d Cir.1964) (remanding case where a contract in evidence raised doubts

as to the accuracy of plaintiff's counsel's affidavit).  Again, there has been no similar disputes of

material fact in this case.

For example, in *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d

109, 114 (1st Cir. 1990), the First Circuit remanded for further proceedings on the issue of *in*

*personam* jurisdiction.  There, however, a party had requested (but not received) an evidentiary

hearing, the relevant affidavits were made on "knowledge and belief" and did not show

competence to testify on crucial points, and the court applied an improper, "light-most-

favorable" standard.  Here, no party has requested a hearing.[8]  The affidavits are declared to be

true and correct, under penalty of perjury, "based upon personal knowledge, public information,

corporate records, and/or by communications with staff, trustees, or beneficiaries," or "on

personal knowledge and corporate records" and the affiants "could testify competently" as to all

the facts stated.  (Second A.L.L. Aff. ¶ 19; S.P.S. Aff. ¶ 15).  Finally, the Court is requiring

plaintiffs to carry the burden of proving jurisdiction rather than applying a light-most-favorable

standard.

To the extent the affidavits themselves contain hearsay—in particular, the statements in

the affidavits as to the residences of certain individuals—the question is more challenging.

Normally, the operative question is whether such evidence could be presented in a form that

would be admissible at trial (or, more relevant here, an evidentiary hearing), not whether the

---

[8] If defendants had requested a hearing, the Court would have had to consider whether, "given the nature
and circumstances of the case," the parties had "a fair opportunity to present relevant facts and arguments to the
court, and to counter the opponent's submissions."  *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 894 (1st Cir. 1988)
(finding there was a fair opportunity where the original case had been pending for months, there was obvious
familiarity with it, the parties had made many submissions, including detailed briefs, affidavits, and more than two
dozen documentary exhibits, and the critical facts were not genuinely in dispute); *General Contracting*, 899 F.2d at
115; *U-Nest Holdings, Inc. v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*, 82 F.4th 61, 64 (1st Cir. 2023)
(applying test to a Rule 60(b) motion).  Here, at a minimum, the parties had a fair opportunity to present the relevant
facts and arguments.

evidence has been reduced to its final form at this stage.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (holding a nonmoving party could defeat summary judgment with materials capable of being reduced to admissible evidence at trial); *United States Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920, 926 (4th Cir. 1995) (finding possible hearsay did not preclude relying on the moving party's evidence); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (noting that, after the 2010 amendment to Rule 56, all that must be shown is that the evidence "be capable" of authentication at trial); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (finding that district courts may consider hearsay on motion for summary judgment "if the statement could be reduced to admissible evidence at trial or reduced to admissible form").  Because the evidence here could be presented in a form that would be admissible at an evidentiary hearing, the Court is not precluded from relying on those statements.

## 2. <u>Documentary Evidence</u>

As noted, plaintiffs produced more than 1,700 pages of documents, consisting largely of organizational documents for various entities.  That documentation is more "supporting documentation tha[n] would . . . normally be required."  *BRT*, 68 F.4th at 698.  Defendants object that plaintiffs lack access to or have not provided specific documents.  (Opp. at 7-9).  As to the majority of those documents, the relevant documentation was produced.  (Pls.' Reply at 3; MPJ_000887-001625).[9]  While certain other documentation either does not exist or has not been provided, that documentation is not necessary to determine citizenship.  (*See* Pls.' Reply at 6-8).[10]  Moreover, it is noteworthy that such documentation was not requested.

---

[9] Thus, defendants' suggestion that "the individuals listed as owners may only be based on documents that cannot be confirmed as current and not amended as of the relevant filing date" is unavailing.  (Opp. at 8).

[10] Specifically, defendants mention documents concerning H.C. and Company (Not Incorporated); the BE3, BE4, and BE5 partnership agreements; the trust instrument for the M.I.P. Family Trust; documentation for HCC

The documents that were produced were authenticated and appear to be records of a regularly-conducted activity within the meaning of Fed. R. Evid. 803(6).  Moreover, defendants have raised no factual challenge to their accuracy.  "Discovery is expensive enough without adding make-work." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 156 (1st Cir. 2021).  "When a party in response to discovery requests points to a document that appears on its face to be a business record of the producing party, the other parties should be able to treat the document as authentic unless someone offers some reason to think otherwise, before it is too late to do something about it." *Id.* at 156-57.

Under the circumstances, the Court will consider the contents of the exhibits in determining the citizenship of the relevant entities and individuals.

### 3.    Residence and Domicile

The most significant challenge raised by defendants arises from the statements in the affidavits concerning the domicile or residence of the relevant individuals.  As noted, the affidavits contain assertions as to the "domicile" of some individuals and the "residence" of others.

Again, "citizenship or domicile, not residence, is the basis of subject[-]matter jurisdiction." *Bank One*, 964 F.2d at 53.  And domicile has a subjective element—that is, a person's intention to remain indefinitely at a particular residence and to return to it when he or she is absent.  *See Rodríguez-Díaz*, 853 F.2d at 1029.

The S.P.S. Affidavit provides the resident states of 17 individuals, and the Second A.L.L.

---

Manager, LLC; and the C. trust documents other than the J.C.C. trusts.  (Opp. at 9).  The BE3, BE4, and BE5 partnerships do not have written agreements, and the M.I.P. Family Trust is not part of the ownership structure.  (Pls.' Reply at 6-7).  Other documents are under the auspices of an outside investor, C Banner Investments III LLC, who was subpoenaed for information and "provided the only two that are potentially relevant," namely the J.C.C. trust documents.  (Pls.' Reply at 2, 4-5).  As set forth below, the relevant citizenship information has nonetheless been provided.

Affidavit provides the states of domicile of 32 individuals.[11]

Arguably, the evidence as to domicile in the Second A.L.L. Affidavit is admissible under Fed. R. Evid. 803(3) as a statement concerning the state of mind of those individuals. A.L.L. did not, however, provide specific details as to how he learned the intentions of those persons. The statements of "domicile" are not challenged as a factual matter, and may well be sufficient under the circumstances. Nonetheless, the court will treat both affidavits alike—that is, as if both contained only statements as to the "residence" of the relevant individuals. The question, then, is whether that is sufficient in the circumstances of this case.

The Supreme Court has stated on at least three occasions that proof of residence is sufficient to establish *prima facie* proof of domicile. *See Anderson v. Watt*, 138 U.S. 694, 706 (1891) (stating that "[t]he place where a person lives is taken to be his domicil[e] *until facts adduced establish the contrary*") (emphasis added); *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) (same); *Ennis v. Smith*, 55 U.S. (14 How.) 400, 423 (1852) (same). Other courts, in more recent opinions, have held the same. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("Where one lives is prima facie evidence of domicile."); *Stine v. Moore*, 213

---

[11] It is not unusual for third parties to attest to the residences or citizenships of other natural persons. For example, family members do so with some regularity, particularly given the presumption that married people are domiciled with their spouse and family. *See, e.g.*, *McNatt v. Allied-Signal, Inc.*, 972 F.2d 1340, at *4 (9th Cir. 1992); *O'Toole v. Arlington Tr. Co.*, 681 F.2d 94, 97 (1st Cir. 1982). And a lawyer or other person may attest on behalf of a class, such as where the CAFA home-state exception may apply. *See, e.g.*, *Freedman v. Dan O'Brien Kia Norwood*, 2021 WL 601702 (D. Mass. Jan. 6, 2021); Garick Aff., *id.* (20-cv-11369), ECF No. 36-1 (Nov. 30, 2020); *Dee v. Chelsea Jewish N. Shore Assisted Living, Inc.*, 585 F. Supp. 3d 119 (D. Mass. 2022); Hillel Aff., *id.* (21-cv-10980), ECF No. 16-2 (Jan. 19, 2022); *see also de Walker v. Pueblo Int'l, Inc.*, 569 F.2d 1169, 1171 n.2 (1st Cir. 1978) (declining to decide if a plaintiff's attorney's affidavit was competent to introduce evidence taken from defendant's files).

In the CAFA context, several courts have found that "the evidentiary standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007); *see also Lax v. APP of New Mexico ED, PLLC*, 2022 WL 2711230, at *5 (10th Cir. July 13, 2022); *Dee*, 585 F. Supp. 3d at 122 (D. Mass. 2022). While there are fewer natural persons at issue here, when the nested corporate layers are included—the trusts, the partnerships, the limited liability corporations—the number of needed citizenship findings also approaches one hundred.

F.2d 446, 448 (5th Cir. 1954) ("Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile."); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile."); Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3612 (3d ed.) ("It is assumed, for example, that a person's current residence is also his domicile"); *but see Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660 (4th Cir. 1998) (concluding that citizenship for purposes of diversity jurisdiction cannot be inferred from allegations of residence standing alone).

While the First Circuit "has never expressly recognized such a principle," and "has consistently required a careful analysis of a variety of factors to determine a party's domicile," it has also stated that "[l]ooking at residency alone is an insufficient analysis *if there are other facts*." *Aponte-Dávila*, 828 F.3d 40, 47 n.4 (emphasis added). *See also Zoroastrian Ctr.*, 822 F.3d at 750 n.6 ("Physical presence coupled with residency is prima facie proof of citizenship . . . . Without something to cast doubt on this evidence, the district court did not err by accepting these facts as adequate to establish the trustees' citizenship."); *Lundquist*, 946 F.2d at 11 ("[R]esidence is highly relevant to the issue of domicile").

Here, defendants have offered no reason to conclude, or even cause the Court to suspect, that the domiciles of the individuals at issue are not the same as their residences. Put another way, there are no "other" relevant facts for the court to consider in determining the citizenship of those individuals. *Aponte-Dávila*, F.3d at 47 n.4.

Litigation concerning the citizenship of natural persons normally involves a factual conflict—one party asserts a person is domiciled in one location, while the other party asserts

that person is domiciled in another.[12]  Here, there is no such conflict; defendants simply assert

that plaintiffs have failed to meet their burden of proof.  But even the burden of proof itself, at

least in the jurisdictional context, is predicated on the basis of a challenge.  *See Media*

*Duplication Servs., Ltd.*, 928 F.2d at 1235 ("*Once jurisdictional allegations are challenged*, the

party asserting diversity has the burden of establishing those allegations with competent proof."

(emphasis added)); *O'Toole*, 681 F.2d at 98 ("the burden of proof is on the plaintiff to support

allegations of jurisdiction with competent proof *when the allegations are challenged by the*

*defendant*." (emphasis added)); *Aponte-Dávila*, 828 F.3d at 46 ("*Once challenged*, the party

invoking diversity jurisdiction must prove domicile by a preponderance of the evidence."

(quoting *García Pérez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004)) (emphasis added)).  And

the objections presented here beg the question of what it means to challenge jurisdictional

allegations without raising a factual conflict.

It is true, of course, that evidence of domicile is largely in the control of the plaintiffs.

And it is likewise true that plaintiffs likely could have obtained more complete affidavits from

the individuals without undue burden.  Nonetheless, under the circumstances, the Court sees no

reason to reject the plaintiffs' evidence on that basis.

First, and as noted, defendants elected to take no jurisdictional discovery, despite being

provided an opportunity to do so.  *See BRT*, 68 F.4th at 699 (noting that jurisdictional discovery

was a "sensible . . . approach").  They were not, of course, required to take discovery, but they

---

[12] *See, e.g.*, *O'Toole v. Arlington Tr. Co.*, 681 F.2d 94, 97 (1st Cir. 1982) (Massachusetts or Florida); *Bank One*, 964 F.2d 48 (Massachusetts or Texas); *Izquierdo v. Denton Const., Co.*, 39 F.3d 1166 (1st Cir. 1994) (New York or Puerto Rico); *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8 (1st Cir. 1991) (New Hampshire or Florida); *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29 (1st Cir. 2008) (Florida or Puerto Rico); *Rodriguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 32-34 (1st Cir. 2011) (Puerto Rico or California).

did choose not to adduce any additional facts through that process.[13]

Second, defendants did not request an evidentiary hearing. "The proponent of an evidentiary hearing must, of course, ask for one in a timely fashion, and must thereafter convince the court of its desirability." *General Contracting*, 899 F.2d at 115 (citations omitted); *see Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir. 1989); *U-Nest Holdings, Inc.*, 82 F.4th at 64; *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 137 (1st Cir. 2005) ("[T]here is no requirement under Rule 60(b) that contested allegations automatically get an evidentiary hearing regardless of plausibility or import."). Again, they were not required to do so, but they chose to forgo that opportunity.

Third, defendants had access to other potential resources that they apparently elected not to employ (or, alternatively, employed but did not find fruitful). For example, a vast amount of personal data as to most Americans—including information concerning such things as property ownership, residential addresses, voter registrations, and the like—is available online. Information of that nature might, under many circumstances, cast substantial doubt on an individual's domicile. For example, evidence of the existence of a seasonal residence or other second home; attendance at a college or graduate school; or current military service might well be enough to create such doubt, or indeed to overcome the presumption that a person's residence is the same as his or her domicile.

In any event, the Court need not speculate as to what quantum of evidence might be necessary to overcome the presumption of domicile, or otherwise to rebut a *prima facie* case.

---

[13] The First Circuit has noted that a "party seeking to invoke diversity jurisdiction which fails to avail itself of opportunity to present evidence acts at its own peril." *Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1236 (1st Cir. 1991) (citing *O'Toole*, 681 F.2d at 98). To some extent, at least, that principle ought to operate both ways; a party seeking to challenge factual assertions of diversity that fails to avail itself of such an opportunity also does so at its peril.

Here, again, there is no such contrary evidence, and the supporting documentation provides substantial evidence in support of the affidavits. (*See, e.g.*, MPJ_000152; MPJ_001429; MPJ_001526; MPJ_001194).  In the absence of *any* countervailing evidence, the Court will apply the principle that proof of residence is *prima facie* proof of domicile.  And plaintiffs have carried their burden of proving the domiciles by a preponderance of the evidence.[14]

Accordingly, the Court concludes that plaintiffs have established the domiciles of all relevant individuals.

All but one of those individuals are citizens of states other than Massachusetts.  The sole exception is J.C.C., who is domiciled in Massachusetts.  J.C.C.'s place in the jurisdictional inquiry is as a beneficiary of two trusts that have relevant ownership interests.  Whether her Massachusetts domicile destroys diversity depends on the nature of those trusts.

### C.    Citizenship of Trusts

For diversity purposes, the citizenship of a trust depends on whether it is a "traditional" trust or a "business" trust.  *See BRT*, 68 F.4th at 697; *GBForefront*, 888 F.3d at 39; *Wang ex rel. Wong*, 843 F.3d at 494; *Loubier*, 858 F.3d at 722.  If the trust is traditional, its citizenship is based only on the citizenship of its trustee, not the citizenship of its beneficiaries.  *BRT*, 68 F.4th at 697.  If it is a business trust, its citizenship is based on the citizenship of its members.  *Id*.

To determine whether a trust is traditional, "courts have looked to whether it can sue and be sued, and the extent to which it is otherwise treated as a juridical person under state law."  *Id*. "[A] traditional trust for diversity generally describes a fiduciary relationship regarding property

---

[14] When the standard is preponderance of the evidence, minimal evidence does not equate to insufficient evidence.  *See Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 33 (1st Cir. 2008) ("[N]othing we have said in our prior decisions implies that the typical indicia of domicile are required in order to change one's domicile; rather, we have described these as examples.").

where the trust cannot sue and be sued as an entity under state law." *Wang ex rel. Wong*, 843

F.3d at 495; *see Alliant Tax Credit 31 v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019) (same).

If a trust is treated as a jurisdictional person under state law, it is not a traditional trust. *Wang ex*

*rel. Wong*, 843 F.3d at 495; *see also Alliant Tax Credit 31*, 924 F.3d at 1143; *Loubier*, 858 F.3d

at 731 ("[B]ecause the party trusts here are not organized according to state law as distinct

juridical entities but, rather, are traditional trusts, establishing only fiduciary relationships, they

are incapable of being haled into court except through their trustees").

       The two trusts of which J.C.C. is the sole beneficiary are the J.C. 65 Trust and the J.C.

Trust.  (S.P.S. Aff. ¶ 9; ECF No. 265, filed under seal).  Both are Illinois trusts.[15]  Thus, the

Court looks first to Illinois state law to uncover the nature of the trusts.

       Under Illinois law, "[a] written trust possesses a distinct legal existence that is recognized

by statute and can sue or be sued through its trustee in a representative capacity on behalf of the

trust." *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1010 (2005) (citing 760 ILCS 5/4 et seq.);

*Trustees of Carpenters' Health & Welfare Tr. Fund of St. Louis v. Darr*, 694 F.3d 803, 811 (7th

Cir. 2012) ("[I]n Illinois, trustees in their representative capacity are the same entity as the

trust."); *see also* 760 ILCS 3/103 (including trust or other legal entity in the definition of person).

Thus, in Illinois, written trusts are both distinct legal entities and sue or are sued through their

trustees.

       Some courts make a "second, and closely related, inquiry . . . focus[ing] on the purpose

---

[15] In diversity cases, federal courts apply the choice-of-law rules of the state in which they sit.  *Klaxon Co. v. Stentnor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  "Massachusetts generally follows the functional approach to choice-of-law analysis," relying, in part, on the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (Am. L. Inst. 1971).  *Hisert on Behalf of H2H Assocs., LLC v. Haschen*, 980 F.3d 6, 8 (1st Cir. 2020).  The evaluation of trust documents appears consistent with that approach.  *See Boston Safe Deposit & Tr. Co. v. Paris*, 15 Mass. App. Ct. 686, 690-91 (1983).  Here, there are no explicit provisions in the trust instruments concerning the governing state law.  However, the place of execution, the domiciles of the grantor and trustee, and the location of the subject matter of the trusts are all in Illinois.  (ECF No. 265, filed under seal).  Illinois clearly has the most significant relationship to the trusts, and therefore the Court will apply Illinois law.

of the trust." *GBForefront*, 888 F.3d at 40 ("[T]he particular labels affixed by state law are not

of themselves determinative."); *see Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1229-30

(9th Cir. 2019) (outlining various considerations to analyze when defining a trust); *Americold*

*Realty*, 577 U.S. at 383 (stating that a trust entity's membership is not limited to its trustees "just

because the entity happens to call itself a trust"); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 472

(1980) (Blackmun, J., dissenting) (arguing that state law is "relevant" but not "fully dispositive"

for a federal jurisdiction question).  "[A] traditional trust facilitates a donative transfer, whereas a

business trust implements a bargained-for exchange."  *GBForefront*, 888 F.3d at 40 (internal

citations omitted).

S.P.S. has attested that he was the trustee of the J.C. 65 Trust and the J.C. Trust as of

January 3, 2017.  (S.P.S. Aff. ¶ 10).  He does not directly attest that each trust is traditional.

Rather, he asserts that for the trusts of which J.C.C. is the beneficiary, he "had the sole power

and authority concerning the trust estate and also the sole power and authority to sue on any

claims for or against the trust estate."  (*Id.* ¶ 12).  The instruments creating the J.C. 65 Trust and

J.C. Trust are also attached to his affidavit.  (*Id.* ¶ 11).

Based on the evidence before the Court, both trusts create traditional, fiduciary

relationships wherein the grantor delivers property to the trustee for the welfare of a beneficiary.

They are therefore traditional trusts.  And because both trusts are traditional, their citizenship is

determined by the citizenship of their trustee.  S.P.S. is an Illinois citizen, and therefore both

trusts are likewise Illinois citizens for purposes of diversity jurisdiction.

For the sake of completeness, the Court will address the citizenship of the other trusts.

The relevant trusts may be divided into two groups for the sake of clarity:  the trusts connected to

H.C. and Company and the group of trusts referred to as the "XXX" group (according to the

23

numbering by Roman numerals in the Second A.L.L. Affidavit).

There is no direct statement from S.P.S. as to the nature of the other C. trusts, nor are the trust instruments part of the evidentiary record.  However, the trustee is a citizen of Illinois.  The states of residence of every other C. trust beneficiary are states other than Massachusetts (Arizona, California, Colorado, Illinois, or New York).  (S.P.S. Aff. ¶¶ 9, 10).  Thus, regardless of whether the trusts are traditional or non-traditional, the trusts are diverse for the purpose of determining diversity jurisdiction.  *See BRT*, 68 F.4th at 697 (citing *Zoroastrian Ctr.*, 822 F.3d at 749-50).

Similarly, A.L.L. did not testify as to the nature of the XXX trusts.  However, plaintiffs contend that all the XXX trusts were traditional and submitted the trust documentation.  (Pls.' Mem. at 8; Pls.' Reply at 3; MPJ_000887-001625).[16]  A.L.L. attested that the domicile of all trustees was Illinois and that all beneficiaries were domiciled in either Illinois, Michigan, or Wisconsin.  (Second A.L.L. Aff. ¶¶ 14-15).  Again, regardless of whether the trusts are traditional or non-traditional, the trusts are diverse for the purpose of determining diversity jurisdiction.  *See BRT*, 68 F.4th at 697-98 ("[I]nformation about the trusts' beneficiaries or members (however defined) [] might moot any need to determine whether it is necessary to look beyond the citizenship of the trust or its trustees.").

In summary, the two critical trusts (the J.C. 65 Trust and the J.C. Trust) are traditional trusts.  Their citizenship is therefore determined by the citizenship of the trustees, not the

---

[16] All of the trust beneficiaries from the XXX group of trust agreements appear from the face of the trust documents to be members of the same extended family, indicating that the purposes of the trusts are donative transfers, rather than bargained-for exchanges.  (*See* ECF No. 274 at 7-8; ECF No. 265, filed under seal).  *See GBForefront*, 888 F.3d at 40 ("Another general distinction between traditional and business trusts is that a traditional trust facilitates a donative transfer, whereas a business trust implements a bargained-for exchange." (citing *Wang*, 843 F.3d at 495)); *Loubier*, 858 F.3d at 729 (discussing an undisputed traditional trust for estate planning).  Defendants do not contend otherwise.  (*See generally* Opp. at 5-10).

beneficiaries.  And because the trustee is a citizen of Illinois, so too are the trusts.  All the other

trustees and beneficiaries are not citizens of Massachusetts, making it unnecessary to determine

the nature of each of those trusts.  Finally, the sole corporation at issue is an Illinois corporation

with a principal place of business in Illinois.

There is, therefore, complete diversity of citizenship between every party on the plaintiff

side and every party on the defendant side.  Accordingly, this court has subject-matter

jurisdiction over this matter under 28 U.S.C. § 1332.

IV.    **Conclusion**

For the foregoing reasons,

1.  the motion to confirm jurisdiction and re-enter judgment by Malden Storage LLC and

Plain Avenue Storage LLC is GRANTED;

2.  the motion to dismiss for lack of jurisdiction by BRT Management LLC and Bruce

Wallace is DENIED; and

3.  the clerk is directed to return this matter to the United States Court of Appeals for the

First Circuit for further proceedings.

The Court's jurisdiction findings of fact are set forth in Appendix I to this Memorandum

and Order.

**So Ordered.**

                                                          /s/ F. Dennis Saylor IV
                                                          _____
                                                          F. Dennis Saylor IV
Dated: December 18, 2023               Chief Judge, United States District Court

<u>APPENDIX I</u>

**I.**    <u>**Jurisdictional Findings of Fact**</u>

The following facts are determined as of January 3, 2017.[17]

1.    Defendants Malden Storage, LLC and Plain Avenue Storage, LLC are limited liability companies with a single member, C Banner Storage, LLC. (MPJ_000001, MPJ_000002).

2.    C Banner Storage, LLC is a limited liability company.  Its members are Banner Storage Holding, LLC and C Banner Investments III LLC.  (MPJ_000001, MPJ_000002).

**A.**    <u>**Banner Storage Holding, LLC**</u>

3.    Banner Storage Holding, LLC is a limited liability company.  It has three classes of members:  Class A, Class B-1, and Class B-2.  (MPJ_000002).

4.    Class A has one member:  Banner RH, LLC.  (*Id.*).

5.    Class B-1 has one member:  GMD, LLC.  (*Id.*).

6.    Class B-2 has nine members:  Banner RH, LLC; Banner Storage Group, LLC; WH, LLC; TSUM, LLC; JS, LLC; KMCDY, LLC; AL, LLC; BTOOM, LLC; and BE6.  (*Id.*).

**1.**    <u>**Class A of Banner Storage Holding, LLC**</u>

7.    Banner RH, LLC is a limited liability company.  Its only member is Banner Apartments, LLC, which is also a limited liability company.  (*Id.*).

---

[17] The Court cites to the record exhibits attached to the affidavits of A.L.L. and S.P.S.  Some of the cited materials include summaries or charts.  *See* Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court").

8.  Banner Apartments, LLC has three classes of members:  Class A, Class B, and Class C.  (MPJ_000013).  Banner RH, LLC is also a Class B-2 member.  (MPJ_000002).

9.  The Class A members of Banner Apartments, LLC are the M.A.P. 2004 Trust; the M.I.P. 2004 Trust; and the D. & G.P.G. 2004 Trust.  (*Id.*).

10.  M.A.P. is the trustee and beneficiary of the M.A.P. 2004 Trust.  (*Id.*).

11.  M.I.P. is the trustee and beneficiary of the M.I.P. 2004 Trust.  (*Id.*).

12.  D.G. and G.P.G. are the co-trustees and beneficiaries of the D. & G.P.G. 2004 Trust.  (*Id.*).

13.  The Class B members of Banner Apartments, LLC are Banner Investments, Inc.; Banner Realty LLC; Banner Equities Limited Partnership; and four general partnerships:  BE2, BE3, BE4, and BE5.  (MPJ_000014).

14.  Banner Investments, Inc. is an Illinois corporation with a principal place of business in Illinois.  (*Id.*).

15.  Banner Realty LLC is a limited liability company.  Its members are the M.R.P. Family Trust, the M.A.P. Family Trust, and the D. & G.P.G. Family Trust.  (MPJ_000016).

16.  M.I.P. is the trustee and beneficiary of the M.R.P. Family Trust.  (*Id.*).

17.  M.A.P. is the trustee and beneficiary of the M.A.P. Family Trust.  (*Id.*).

18.  D.G. and G.P.G. are the co-trustees and beneficiaries of the D. & G.P.G. Family Trust.  (*Id.*).  G.N.G., D.S., and R.J.S. are also beneficiaries of that trust.  (*Id.*).

19.  The partners of Banner Equities Limited Partnership are Banner Investments, Inc.; M.A.P.; the M.I.P. Trust; and PFT Holding, LLC.  (MPJ_000017).

20.   As noted above, Banner Investments, Inc. is an Illinois corporation with a principal place of business in Illinois.  (*Id.*).

21.   M.I.P. is the trustee and beneficiary of the M.I.P. Trust.  (*Id.*).

22.   PFT Holding, LLC is a limited liability company.  Its only member is the P. Family Trust.  (MPJ_000022).

23.   S.P.S. is the trustee of the P. Family Trust.  The beneficiaries of the P. Family Trust are M.I.P., M.A.T.P., E.M.P., C.N.P., M.A.P., S.A.R.P., J.O.P., S.A.M.P., G.P.G., D.S., R.J.S., G.N.G., J.A.C., S.E.C., A.N.C., and M.A.C.  (*Id.*).

24.   The general partners of BE2 are the M.R.P. Family Trust, the M.A.P. Family Trust, and PFT Holding, LLC.  (MPJ_000018).  The ownership structure of PFT Holding, LLC is described above.

25.   As noted above, M.I.P. is the trustee and beneficiary of the M.R.P. Family Trust.  (*Id.*).

26.   As noted above, M.A.P. is the trustee and beneficiary of the M.A.P. Family Trust.  (*Id.*).

27.   The general partners of BE3 are the M.R.P. Family Trust, the M.A.P. Family Trust, and PFT Holding, LLC., described above.  (MPJ_000019).

28.   The general partners of BE4 are the MRP Family Trust and the M.A.P. Family Trust, described above.  (MPJ_000020).

29.   The general partners of BE5 are M.I.P., M.A.P., G.P.G., and the M.I.P. Trust.  (MPJ_000021).

30.   As noted above, M.I.P. is the trustee and beneficiary of the M.I.P. Trust.  (*Id.*).

31.   The members of Class C of Banner Apartments, LLC are the M.R.P. Family

Trust; the M.A.P. Family Trust; the D. & G.P.G. Family Trust; the M.I.P. 2017

Children's Trust; the M.A.P. 2017 Children's Trust; the G.P.G. 2017 Children's

Trust; the J.A.C. 2017 Children's Trust for A.N.C.; the J.A.C. 2017 Children's

Trust for M.A.C.; and the J.A.C. 2017 Children's Trust for S.E.C.

(MPJ_000015).

32.     As noted above, M.I.P. is the trustee and beneficiary of the M.R.P. Family Trust.

        (*Id.*).

33.     As noted above, M.A.P. is the trustee and beneficiary of the M.A.P. Family Trust.

        (*Id.*).

34.     D.G. and G.P.G. are the co-trustees and beneficiaries of the D. & G.P.G. Family

        Trust.  (*Id.*).  G.N.G., D.S., and R.J.S. are also beneficiaries of that trust.  (*Id.*).

35.     D.G. is the trustee of the G.P.G. 2017 Children's Trust.  (*Id.*).  G.N.G., D.S., and

        R.J.S. are also beneficiaries of that trust.  (*Id.*).

36.     E.L.P. is the trustee of the M.I.P. 2017 Children's Trust.  (*Id.*).  M.A.T.P., E.M.P.,

        and C.N.P. are the beneficiaries of that trust.  (*Id.*).

37.     C.B. is the trustee of the M.A.P. 2017 Children's Trust.  (*Id.*).  The beneficiaries

        of that trust are S.A.R.P., J.O.P., and S.A.M.P.  (*Id.*).

38.     C.B. is the trustee of the J.A.C. 2017 Children's Trust for A.; the J.A.C. 2017

        Children's Trust for M.; and the J.A.C. 2017 Children's Trust for S.  (*Id.*).  The

        beneficiaries of those trusts are A.N.C., M.A.C., and S.E.C. respectively.  (*Id.*).

        **2.      Class B-1:  Banner Storage Holding, LLC**

39.     GMD, LLC is a limited liability company.  It has two members: B-Dev Manager,

        LLC and G.A.D.  (MPJ_000012).

40.     B-Dev Manager, LLC is a limited liability company.  Its only member is Banner

Development, LLC.  (*Id.*).

41.   Banner Development, LLC is a limited liability company.  Its only member is Banner Apartments Holding, LLC.  (*Id.*).

42.   Banner Apartments Holding, LLC is a limited liability company.  Its only member is Banner Apartments, LLC.  (*Id.*).  The members of Banner Apartments, LLC are described above.

### 3.   Class B-2:  Banner Storage Holding, LLC

43.   Banner Storage Group, LLC is a limited liability company.  Its only member is Banner Development, LLC.  (MPJ_000004). The members of Banner Development, LLC are described above.

44.   WH, LLC is a limited liability company.  Its members are B-Dev Manager, LLC and W.I.H.  (MPJ_000005).  The members of B-Dev Manager, LLC are described above.

45.   TSUM, LLC is a limited liability company.  Its members are B-Dev Manager, LLC and T.H.S.  (MPJ_000006).  The members of B-Dev Manager, LLC are described above.

46.   JS, LLC is a limited liability company.  Its members are B-Dev Manager, LLC and J.O.S.  (MPJ_000007).  The members of B-Dev Manager, LLC are described above.

47.   KMCDY, LLC is a limited liability company.  Its members are B-Dev Manager, LLC and K.E.M.  (MPJ_000008).  The members of B-Dev Manager, LLC are described above.

48.   AL, LLC is a limited liability company.  Its members are B-Dev Manager, LLC and A.L.L.  (MPJ_000009).  The members of B-Dev Manager, LLC are described

above.

49.     BTOOM, LLC is a limited liability company.  Its members are B-Dev Manager, LLC and B.T.O.  (MPJ_000010).  The members of B-Dev Manager, LLC are described above.

50.     The partners of BE6 are BE6 Manager, LLC; the D. & G.P.G. 2004 Trust; the M.A.P. 2004 Trust; the J.A.C. 2017 Children's Trust for A. u/a/d January 1, 2017; the J.A.C. 2017 Children's Trust for M. u/a/d January 1, 2017; and the J.A.C. 2017 Children's Trust for S. u/a/d January 1, 2017.  (MPJ_000011).

51.     BE6 Manager, LLC is a limited liability company.  Its only member is the M.I.P. 2004 Trust.  (*Id.*).

52.     As noted above, M.I.P. is the trustee and beneficiary of the M.I.P. 2004 Trust. (*Id.*).

53.     D.G. and G.P.G. are the co-trustees and beneficiaries of the D. & G.P.G. 2004 Trust.  (*Id.*).

54.     As noted above, M.A.P. is the trustee and beneficiary of the M.A.P. 2004 Trust. (*Id.*).

55.     C.B. is the trustee of the J.A.C. 2017 Children's Trust for A. u/a/d January 1, 2017; the J.A.C. 2017 Children's Trust for M. u/a/d January 1, 2017; and the J.A.C. 2017 Children's Trust for S. u/a/d January 1, 2017.  (*Id.*).

56.     A.N.C. is the beneficiary of the J.A.C. 2017 Children's Trust for A. u/a/d January 1, 2017.  (*Id.*).

57.     M.A.C. is the beneficiary of the J.A.C. 2017 Children's Trust for M. u/a/d January 1, 2017.  (*Id.*).

58.    S.E.C. is the beneficiary of the J.A.C. 2017 Children's Trust for S. u/a/d January

1, 2017.  (*Id.*).

**B.    C Banner Investments III, LLC Ownership**

59.    C Banner Investments III is a limited liability company.  Its only member is H.C.

and Company (Not Incorporated), a limited liability partnership.  (S.P.S. Aff. ¶ 8).

60.    The limited partners of H.C. and Company (Not Incorporated) are HCC Manager

LLC, R.C.G., J.S.C., and 34 trusts of which S.P.S. is the trustee.  (S.P.S. Aff. ¶ 9).

61.    HCC Manager LLC is a limited liability company.  Its members are A.S.C.,

W.H.C., and J.S.C.  (S.P.S. Aff. ¶ 8).

62.    The 34 trusts, and their beneficiaries, are as follows:

         a.    A.S.C. 65 Trust (beneficiary:  A.S.C.);

         b.    A.S.C. Trust (beneficiary:  A.S.C.);

         c.    B.N.G. 65 Trust (beneficiary:  B.G.M.);

         d.    B.N.G. Trust (beneficiary:  B.G.M.);

         e.    D.M.C. 65 Trust (beneficiary:  D.M.C.);

         f.    D.M.C. Trust (beneficiary:  D.M.C.);

         g.    D.A.C. 65 Trust (beneficiary:  D.A.C.);

         h.    D.A.C. Trust (beneficiary:  D.A.C.);

         i.    D.L.C. 65 Trust (beneficiary:  D.L.C.);

         j.    D.L.C. Trust (beneficiary:  D.L.C.);

         k.    E.I.C. 65 Trust (beneficiary:  E.I.C.);

         l.    E.I.C. Trust (beneficiary:  E.I.C.);

         m.    J.S.C. 65 Trust (beneficiary:  J.S.C.);

         n.    J.S.C. Trust #1 (beneficiary:  J.S.C.);

o.     J.A.S.C. 65 Trust (beneficiary:  J.A.S.C.);

p.     J.A.S.C. Trust (beneficiary:  J.A.S.C.);

q.     J.C. 65 Trust (beneficiary:  J.C.C.);

r.     J.C. Trust (beneficiary:  J.C.C.);

s.     L.C.G. 65 Trust (beneficiary:  L.C.G.);

t.     L.C.G. Trust (beneficiary:  L.C.G.);

u.     N.J.C. 65 Trust (beneficiary:  N.J.C.);

v.     N.J.C. Trust (beneficiary:  N.J.C.);

w.     P.A.C. 65 Trust (beneficiary:  P.A.C.);

x.     P.A.C. Trust (beneficiary:  P.A.C.);

y.     R.E.C. 65 Trust (beneficiary:  R.E.C.);

z.     R.E.C. Trust #1 (beneficiary:  R.E.C.);

aa.     R.C.G. 65 Trust (beneficiary:  R.C.G.);

bb.     R.C.G. Trust (beneficiary:  R.C.G.);

cc.     S.B.C. 65 Trust (beneficiary:  S.C.S.);

dd.     S.B.C. Trust (beneficiary:  S.C.S.);

ee.     S.U.C. 65 Trust (beneficiary:  S.U.C.);

ff.     S.U.C. Trust (beneficiary:  S.U.C.);

gg.     W.H.C. 65 Trust (beneficiary:  W.H.C.);

hh.     W.H.C. Trust (beneficiary:  W.H.C.).

(S.P.S. Aff. ¶ 9).

C.     **Natural Persons**

63.     M.A.P. is domiciled in Illinois.  (Second A.L.L. Aff. ¶ 14).

64.     M.I.P. is domiciled in Illinois.  (*Id.*).

65.     D.G. is domiciled in Illinois.  (*Id.*).

66.    G.P.G. is domiciled in Illinois.  (*Id.*).

67.    C.B. is domiciled in Illinois.  (*Id.*).[18]

68.    E.L.P. is domiciled in Illinois.  (*Id.*).

69.    S.T.S. is domiciled in Illinois.  (*Id.*).

70.    S.P.S. is domiciled in Illinois.  (*Id.*).

71.    D.S. is domiciled in Illinois.  (*Id.* ¶ 15).

72.    R.J.S. is domiciled in Wisconsin.  (*Id.*).

73.    M.A.T.P. is domiciled in Illinois.  (*Id.*).

74.    E.M.P. is domiciled in Illinois.  (*Id.*).

75.    C.N.P. is domiciled in Illinois.  (*Id.*).

76.    S.A.R.P. is domiciled in Illinois.  (*Id.*).

77.    J.O.P. is domiciled in Illinois.  (*Id.*).

78.    S.A.M.P. is domiciled in Illinois.  (*Id.*).

79.    G.N.G. is domiciled in Illinois.  (*Id.*).

80.    J.A.C. is domiciled in Illinois.  (*Id.*).

81.    S.E.C. is domiciled in Illinois.  (*Id.*).

82.    A.N.C. is domiciled in Michigan.  (*Id.*).

83.    M.A.C. is domiciled in Illinois.  (*Id.*).

84.    W.I.H. is domiciled in Illinois.  (*Id.* ¶ 14).

85.    T.H.S. is domiciled in Illinois.  (*Id.*).

86.    J.O.S. is domiciled in Illinois.  (*Id.*).

87.    K.E.M. is domiciled in Illinois.  (*Id.*).

---

[18] To the extent G.S.T. is a relevant trustee, she is domiciled in Illinois.  (*Id.* ¶ 16).

88.    A.L.L. is domiciled in Illinois.  (*Id.*).

89.    B.T.O. is domiciled in Illinois.  (*Id.*).

90.    G.A.D. is domiciled in Illinois.  (*Id.*).

91.    R.C.G. is domiciled in Illinois.  (*Id.*).

92.    J.S.C. is domiciled in Illinois.  (*Id.*).

93.    W.H.C. is domiciled in California.  (*Id.*).

94.    A.S.C. is domiciled in Illinois.  (S.P.S. Aff. ¶ 9).

95.    B.G.M. is domiciled in Illinois.  (*Id.*).

96.    D.M.C. is domiciled in New York.  (*Id.*).

97.    D.A.C. is domiciled in Arizona.  (*Id.*).

98.    D.L.C. is domiciled in Illinois.  (*Id.*).

99.    E.I.C. is domiciled in Illinois.  (*Id.*).

100.    J.A.S.C. is domiciled in California.  (*Id.*).

101.    J.C.C. is domiciled in Massachusetts.  (*Id.*).

102.    L.C.G. is domiciled in Illinois.  (*Id.*).

103.    N.J.C. is domiciled in New York.  (*Id.*).

104.    P.A.C. is domiciled in Colorado.  (*Id.*).

105.    R.E.C. is domiciled in Illinois.  (*Id.*).

106.    S.C.S. is domiciled in Colorado.  (*Id.*).

107.    S.U.C. is domiciled in Illinois.  (*Id.*).

108.    S.P.S. had the sole power and authority to sue on any claims for or against the trust estates for the trusts of which J.C.C. was the sole beneficiary.  (S.P.S. Aff. ¶ 12).